Before HILL, JOHNSON and HENDERSON, Circuit Judges.

PER CURIAM:

■ Joseph E. Simanonok filed suit in the tax court seeking a redetermination of his tax liability. The tax court, rejecting Simanonok's contentions that he is not an individual subject to tax, that he is not required to file returns, that he had not received income because his paychecks were received in exchange for his costs and disbursements of labor, and that he is a minister and exempt from indirect taxes (among other claims), entered summary judgment in favor of the Internal Revenue Service. The tax court correctly determined that Simanonok's contentions are completely without merit; we therefore affirm the tax court's decision as to these issues. *See* Circuit Rule 25.

■ On appeal, Simanonok raises for the first time the contention that the tax court is unconstitutional under the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Although Simanonok raises this issue for the first time on appeal, we may consider it because it affects the jurisdiction of the court. *Knighten v. Commissioner*, 705 F.2d 777, 778 (5th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 249, 78 L.Ed.2d 237 (1983). Nevertheless, we find Simanonok's argument on this issue also to be without merit. This issue has been presented to this court before and rejected. *See Melton v. Kurtz,* 575 F.2d 547 (5th Cir.1978); *Nash Miami Motors, Inc. v. Commissioner,* 358 F.2d 636 (5th Cir.1966). Although these cases were decided before the Supreme Court's decision in *Northern Pipeline, Northern Pipeline* does not affect the validity of their holdings. The jurisdiction of the tax court is not so far-ranging as to violate Article III. *See Redhouse v. Commissioner,* 728 F.2d 1249 at 1253 n. 2 (9th Cir.1984).

AFFIRMED.

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William Randall NEWBERN, Robert**
**Bryan Sheppard,**
**Defendants-Appellants.**

**No. 83–7145.**

United States Court of Appeals,
Eleventh Circuit.

May 3, 1984.

Brian J. McMenimen, Constance L. Rudnick, Boston, Mass., for William Newbern.

Daniel J. O'Connell, III, Boston, Mass., for Robert Sheppard.

John C. Bell, U.S. Atty., D. Broward Segrest, Asst. U.S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before KRAVITCH, JOHNSON and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

In this criminal case, we examine first, whether the district court erred when it denied the appellants' motions to suppress evidence seized in their motel room; second, whether sufficient evidence existed to support the jury's verdicts of guilty; and third, whether appellants are entitled to a new trial due to comments made by the prosecutor in his closing argument. Finding that the trial court committed no reversible error, and that sufficient evidence exists to support the jury's verdict, we affirm.

## Background

In February, 1982, agents of the Alabama Bureau of Investigation posed as rural farmers in an investigation of a marijuana importation scheme. The agents (Rhegness and Ward) approached two individuals and offered to provide a secluded airstrip for use in the importation of marijuana. The marijuana-laden plane was scheduled to land in Alabama on March 22, 1982.

On March 22, early in the afternoon, the agents met with several of the conspirators at the Holiday Inn East in Montgomery, Alabama. At that site, the agents saw people installing shortwave radio equipment in vehicles to be used in coordinating the plane's landing. Raulerson, one of the conspirators, drove agent Rhegness to the Ramada Inn East in Montgomery. The Ramada Inn East is located across the interstate from the Holiday Inn East. Raulerson parked the truck in which they were riding behind a large, white Ford box van that was in a parking lot on the south side of the Ramada Inn. Raulerson and Rhegness then proceeded to load from their truck into the van rented conveyor rollers to be utilized for the unloading of the marijuana. Following the moving of the conveyor rollers, Raulerson and Rhegness walked over to a black Chevrolet Blazer which was located on the south side of the Ramada Inn.

Standing in the vicinity of the Blazer were several persons. As Rhegness approached the Blazer, he noticed that Thomas Shea was seated in the front seat on the passenger side. Agent Rhegness stuck his head inside the Blazer and saw appellants, Newbern and Sheppard, seated in the backseat. Although he could not recall the exact words of the conversation, Rhegness testified that Shea spoke to either Newbern or Sheppard concerning the flying of an airplane on a return trip that night. James Boynton then approached the Blazer, and spoke to Shea. Rhegness had earlier talked with Boynton about bringing in the plane load of marijuana. Agent Rhegness testified:

> Mr. Boynton said either, 'will you' or 'can you take the return pilots,' motioning toward the backseat of the Blazer with his thumb, 'over to the Holiday Inn, Opelika, and register them under the name of Kelly, and feed them?'

When referring to the return pilots, Boynton clearly motioned toward the backseat which was occupied by the appellants.

That evening, the marijuana-laden airplane landed near Opelika, Alabama. A short time before the airplane landed, two automobiles left the landing area. When asked where the two automobiles were going, Boynton stated, "They have to go pick up the return pilots." At approximately 9 p.m., following the landing of the airplane, the agents, with assistance from other police officers, began to arrest the conspirators. Rhegness radioed a helicopter to relay a message to the Opelika trooper base to have someone ascertain whether anyone had registered in the Holiday Inn, Opelika, under the name of "Kelly."

Not all the conspirators were apprehended when the police raided the airstrip. Woodward and Boynton, were not immediately apprehended. The two drivers of the automobiles which left the airstrip to pick up the return pilots were not arrested by the time the arrests began at the airstrip. The record indicates that four or more other conspirators may have remained at large after the airstrip raid.

While still at the airstrip, agents Ward and Rhegness were informed that occupants of a room at the Holiday Inn, Opelika, had been registered under the name "Kelly." At approximately midnight, the agents arrived at the Holiday Inn and joined other officers who had room 248 under surveillance. As a result of a knock on the door, the curtains parted to the side of the door and someone looked out. Agent Rhegness recognized the person looking out through the curtains as appellant, Sheppard. Rhegness testified that he did not have his weapon drawn when he knocked on the door. His badge, however, was visible, and other officers who accompanied Rhegness to room 248 had their weapons drawn. Agent Rhegness testified that Sheppard was in a position to see the badges and the weapons. Sheppard opened the door and told the agents to come in. Upon entering the room, the agents heard a toilet flush and saw Newbern stepping out of the bathroom. Agent Ward rushed into the bathroom and grabbed documents which were being flushed down the toilet. The documents pertained to the DC–4 airplane which had earlier landed loaded with marijuana. The officers placed Sheppard and Newbern under arrest. The officers did not secure a search warrant nor an arrest warrant.

On April 14, 1982, Newbern and Sheppard were arraigned with 16 other defendants and charged with conspiracy to import marijuana, importation of marijuana, conspiracy to possess with intent to distribute marijuana, and possession with intent to distribute marijuana.[1] The court granted Newbern's and Sheppard's motions to suppress evidence seized in their motel room at the time of the arrest. On July 9, 1982, during trial, the 16 other defendants pleaded guilty. Due to the guilty pleas, Newbern and Sheppard were granted a mistrial.

On September 8, 1982, the government filed a motion requesting the trial court to reconsider its ruling suppressing the evidence. On September 30, 1982, the district court granted the government's motion and held that the evidence seized from the motel room would be admissible at Newbern and Sheppard's trial.

During the Newbern and Sheppard trial, during closing argument, the prosecutor stated: "But everybody knows that to bring dope into this country and to distribute it for use among the citizenry and the children of this country . . . ." Counsel for Newbern and Sheppard objected and requested a curative instruction. The district court stated: "I am going to instruct them that whether any children was going to get any of this marijuana is not anything to be considered by you whatsoever." Again, the prosecutor, in continuing his closing argument, stated: "Let's assume that no children were going to get nothing but grandmama's milk." Counsel for Newbern and Sheppard again objected and moved for a mistrial. The court denied the mistrial motion and did not give an instruction to the jury. At the close of the government's argument, the court stated that the argument was an improper appeal to emotion, but denied appellants' motions for mistrial. On December 8, 1982, the jury found Newbern and Sheppard guilty as to all four counts with which they were charged.

### Arrest Without Warrant

The officers made a warrantless arrest of appellants in their motel room. The district court, after reconsidering an earlier ruling, refused to suppress evidence resulting from that arrest. The court concluded that sufficient probable cause and exigent circumstances existed to justify entering the room and making the arrest without first obtaining an arrest warrant.

■ "The findings of a District Court on a pretrial motion to suppress are binding upon this Court unless they are clearly erroneous." *United States v. Gunn*, 428 F.2d 1057, 1060 (5th Cir.1970). *See also United States v. Jonas*, 639 F.2d 200, 204 (5th Cir. Unit B 1981).

---

1. The statutes allegedly violated are: Counts I and II, 21 U.S.C.A. § 952(a) (West 1981); Count III, 21 U.S.C.A. §§ 841(a)(1) and 846 (West 1981); Count IV, 21 U.S.C.A. § 841(a)(1) (West 1981).

■ · The law is clear that law enforcement officers are prohibited from making a warrantless and nonconsensual entry into a suspect's home in order to make a felony arrest. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The *Payton* Court, however, did state that law enforcement officers may enter a home to make an arrest, without first obtaining a warrant, if exigent circumstances existed. *Payton,* 445 U.S. at 590, 100 S.Ct. at 1382. "It is now clear that warrantless arrests in a suspect's home may be effected only under exigent circumstances." *United States v. Roper,* 681 F.2d 1354, 1357 (11th Cir.1982), *cert. denied,* 459 U.S. 1207, 103 S.Ct. 1197, 75 L.Ed.2d 440 (1983).

■ The appellants do not seriously question the existence of probable cause for their arrest in the motel room. Newbern and Sheppard's presence at the Ramada Inn on the day of the landing while off-loading preparations were underway, the fact that they were referred to as the return pilots, and sent for before the plane landed indicate sufficient probable cause existed to support an arrest. The government does not seriously question whether Newbern and Sheppard were entitled to fourth amendment protections while in a motel room. The Eleventh Circuit held, consistent with teaching from the Supreme Court, that a person does not forfeit fourth amendment protections merely because he is residing in a hotel room. *United States v. Bulman,* 667 F.2d 1374, 1383 (11th Cir.), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982). Although the room was registered under an alias, appellants had complete control over the room. No other persons were in possession of keys to the room. Appellants' use of the motel room strictly for lodging provides the same expectation of privacy as would their home. *Roper,* 681 F.2d at 1357.

Under *Payton,* absent exigent circumstances, we must conclude that the arrest violated appellants' fourth amendment rights, and all evidence seized from their motel room as a result of the unlawful arrest should have been suppressed.

■ Whether Sheppard consented to the officers' entry into the motel room, thereby, negating any claim of a fourth amendment violation, must first be faced. The government's witness, agent Rhegness, testified that Sheppard, upon pulling back the curtains in his room, was in a position to see the officers' badges and drawn weapons. The fact that Sheppard then told the officers to come in, under such circumstances, cannot be termed an entry based upon consent. We are, thus, left with the question of whether exigent circumstances existed to justify the police officers' entry into the motel room.

■ The marijuana-laden airplane landed on March 22 at approximately 9 p.m. Several minutes earlier, two of the conspirators left the landing area to pick up Newbern and Sheppard, the return pilots. After the airplane landed and the officers moved in to make the arrests, agent Rhegness relayed a message to the Opelika base to have someone ascertain whether a room was registered at the Holiday Inn, Opelika, under the name of Kelly. It was approximately 10:30 to 11:30 p.m. that the officers completed the arrest roundup at the airstrip. Following the arrests, several suspects were unaccounted for. The two drivers who left the scene to pick up the return pilots, although apprehended later that evening, were unaccounted for when the arrests began at the airstrip. Even at the time Agent Rhegness went to the motel room to arrest Newbern and Sheppard, several suspects had not yet been accounted for. Agent Ward testified that Boynton, a co-conspirator, escaped from the police roundup that evening. Woodward, a co-conspirator, although present when the airplane landed, was not in custody. It appears from the record that four or more other suspects may have been unaccounted for when the officers went to the Holiday Inn, Opelika, to arrest Newbern and Sheppard.

The Eleventh Circuit examined the existence of exigent circumstances sufficient to make a warrantless arrest in one's motel room in *Roper.* The court concluded in

*Roper* that sufficient exigent circumstances existed to enable the officers to enter a defendant's room without first obtaining an arrest warrant. Several suspects were occupying rooms on the same hallway in the motel. The *Roper* court held that the officers could enter a room to make an arrest without first obtaining a warrant because the simultaneous arrests could pose a danger to innocent bystanders in the immediate area. "The obvious peril created by attempting to arrest a suspected drug dealer in a hallway where other arrests are taking place while bystanders looked on sufficiently established exigent circumstances to justify returning Roper to his room." *Roper*, 681 F.2d at 1358.

The *Roper* decision in many ways is similar to this case. After the airstrip raid, when the officers realized that several of the co-conspirators had broken free of the police dragnet, exigent circumstances were present. The officers reasonably could have concluded that if they merely waited at the motel room until a warrant was obtained, a real threat existed that several of the other co-conspirators could have telephoned the motel or arrived at the motel room to warn Newbern and Sheppard of the arrests. The officers, to avoid a potentially dangerous situation, were justified in immediately entering the room to make the arrests. In order to protect innocent bystanders in the motel area, the officers were justified in seeking to arrest Newbern and Sheppard before any of the other co-conspirators could arrive on the scene. Exigent circumstances exist when, as in this case, police officers are faced with a situation where failure to act immediately may jeopardize the safety of the officers and the public. To require law enforcement officers to first secure a warrant in a case such as this would lead to the potentially dangerous situation of having other co-conspirators arrive on the scene and join the motel room occupants, creating an explosive situation and endangering the lives of other motel occupants.

The exigent circumstances doctrine recognizes several common situations where the time consuming resort to a neutral magistrate for an arrest or search warrant is unnecessary, for example: hot pursuit ... fleeing suspect ... danger to arresting officers or the public from the suspect or the contents of a container ... or mobility of containers which could not be detained without thwarting efforts to discover other conspirators....

In the present case, it appears that a combination of hot pursuit, the immediate need to discover fleeing conspirators and the danger posited by the possibility of an armed fugitive remaining at large, late at night, in a rural area supplied sufficient exigent circumstances....

*United States v. Kreimes*, 649 F.2d 1185, 1192 (5th Cir. Unit B 1981).

This case differs markedly from the *Bulman* decision. In *Bulman*, the officers entered the defendant's hotel room without first obtaining an arrest warrant two days after the initial arrests. *Bulman*, unlike *Roper*, was not a simultaneous arrest case. Unlike the present case, when the officers in *Bulman* entered the motel room, no evidence existed that any other co-conspirators were still at large. In this case, we have, at most, a three-hour time span from the landing of the airplane to the entry into the motel room. We hold that these considerations were sufficient exigent circumstances to justify the officers' entry into the room without a warrant to secure the arrests of appellants, Newbern and Sheppard. Since the warrantless entry into the room did not violate Newbern's and Sheppard's fourth amendment rights, we conclude that the district court properly denied appellants' motions to suppress the evidence seized from their motel room. The officers were justified in entering the bathroom area to arrest Newbern. Once in the bathroom, they could seize evidence in their view. Newbern's effort to destroy the documents justified the immediate seizure of the document.

### Sufficiency of Evidence

■ In examining a sufficiency of the evidence claim, this court must determine whether, viewing the evidence in the light

most favorable to the government, a reasonable trier of fact could find guilt beyond a reasonable doubt. *United States v. Correa-Arroyave*, 721 F.2d 792 (11th Cir.1983). Both the government and appellants have analyzed the sufficiency of the evidence question solely in regards to the conspiracy counts. It is clear, based upon the evidence, that neither Sheppard nor Newbern participated in the actual importation of marijuana or the actual possession of marijuana. Therefore, their convictions for the substantive offenses of importation and possession of marijuana with intent to distribute are grounded upon the principle of vicarious liability set forth in *United States v. Luis-Gonzalez*, 719 F.2d 1539 (11th Cir.1983). "A conspirator may be found guilty of the substantive act of possession committed by a coconspirator in furtherance of the conspiracy so long as the coconspirator's acts are within the reasonably foreseeable scope of the conspiracy." *Luis-Gonzalez*, 719 F.2d at 1545, n. 4. If the evidence is insufficient to prove Sheppard's and Newbern's participation in either conspiracy, it is also insufficient to sustain the verdicts of guilty of importation or possession with intent to distribute. *United States v. DeSimone*, 660 F.2d 532 (5th Cir. Unit B 1981), *cert. denied*, 455 U.S. 1027, 102 S.Ct. 1732, 72 L.Ed.2d 149 (1982).

The Fifth Circuit in *DeSimone* described what evidence is sufficient to sustain a conviction for conspiracy to distribute and to possess with intent to distribute marijuana and conspiracy to import marijuana.

> To uphold the convictions on the conspiracy counts, we must be satisfied that the government proved beyond a reasonable doubt that these appellants had 'the deliberate, knowing, specific intent to join the conspiracy.' *United States v. Morado*, 454 F.2d 167, 175 (5th Cir.), *cert. denied*, 406 U.S. 917, 92 S.Ct. 1767, 32 L.Ed.2d 116 (1972). 'It is not enough for it merely to establish a climate of activity that reeks of something foul.' *United States v. Wieschenberg*, 604 F.2d 326, 331–32 (5th Cir.1979).
>
> . . . .

> We have consistently held that mere association with persons involved in a criminal enterprise is insufficient to prove participation in a conspiracy. . . . We have just as strongly emphasized that mere presence at the scene of the crime is not enough to sustain a conspiracy conviction. . . . Although it was unnecessary for the government to prove any overt act on the part of DeSimone in furtherance of the drug conspiracy, it did have to establish, either by direct or circumstantial evidence, that he actually entered into an agreement with the purpose of achieving the unlawful objectives of importing, possessing and distributing marijuana.

*DeSimone*, 660 F.2d at 537–38.

■ A defendant may be found guilty under a conspiracy count even though he played only a minor role in the total conspiracy scheme. *United States v. Alvarez*, 625 F.2d 1196 (5th Cir.1980) (en banc), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981). "The government was not required to prove that [defendant] had knowledge of all the details of the conspiracy or each of its members, provided that prosecution established his knowledge of the essentials of the conspiracy." *Id.* at 1198.

■ In this case, sufficient evidence existed for a jury to conclude beyond a reasonable doubt that Newbern and Sheppard had the deliberate, knowing, and specific intent to join the conspiracy. On March 22, the day the marijuana-laden airplane landed, Newbern and Sheppard were seated in the backseat of the Blazer at the Ramada Inn. An unusual amount of activity was taking place around them. Several co-conspirators were moving back and forth handling large conveyor rollers. The Blazer in which they were seated was located in the midst of this activity. When agent Rhegness approached the Blazer, he overheard Shea mention to one of the two men in the backseat of the Blazer something about flying an airplane back that night. The only two people in the backseat of the

Blazer were Newbern and Sheppard. Moments later, Boynton, a co-conspirator, approached the Blazer and asked Shea whether he could take the "return pilots" to the Holiday Inn, Opelika, register them under the name of Kelly, and feed them. This clearly is more than mere presence at the scene of the crime. It is also more than mere association with persons involved in a criminal enterprise. Sheppard and Newbern were assigned an important role in the conspiracy; they were to return the airplane after the marijuana had been off-loaded.

In addition to the fact that Newbern and Sheppard were singled out as the return pilots, other evidence exists in support of the jury's verdict of guilty on the conspiracy counts. No mention has been made of any person by the name of "Kelly." Thus, the jury could conclude that appellants, by residing in a motel room obtained by a co-conspirator under an alias, were aware of and participating in the overall conspiratorial scheme. Additionally, moments before the airplane was scheduled to land, without any request from Newbern and Sheppard, several of the co-conspirators were dispatched to pick up "the return pilots" at the motel.

Police officers seized evidence from Newbern and Sheppard's room tying them to the airplane which brought in the marijuana. A government witness testified that Newbern had earlier purchased fuel for an airplane without using his proper name. The use of an alias in purchasing the fuel, the fact that the only plane present was the marijuana plane, coupled with the registration in the motel under the nonexistent Kelly name, lend further support to the jury's conclusion that Newbern and Sheppard were guilty of the conspiracy counts. The attempt to destroy evidence connecting them to the airplane strengthens the conclusion that Newbern and Sheppard were active members of the conspiracy. *United States v. Trevino*, 560 F.2d 194 (5th Cir. 1977). A jury could reasonably conclude that Newbern and Sheppard were not innocent pilots simply hired to fly an airplane. Seldom do planes fly into and out of plantations and farms in the middle of the night. Based upon the substantial evidence presented by the government, a rational trier of fact could conclude beyond a reasonable doubt that the government proved Newbern and Sheppard had the deliberate, knowing, and specific intent to join the conspiracy. *DeSimone*, 660 F.2d at 537.

The amount of evidence presented in this case is surely no less than that present in *United States v. Alvarez*, 625 F.2d 1196 (5th Cir.1980) (en banc), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981). The en banc court in *Alvarez* held that sufficient evidence existed in that case to sustain the conviction on the count of conspiring to import marijuana. In *Alvarez*, the evidence indicated that the defendant was in the company of the marijuana owner. In addition, the defendant smiled and nodded his head when the undercover agent asked him if he planned to be at the off-loading site. Finally, another co-conspirator confirmed that the defendant intended to be at the offloading site when the airplane landed. The *Alvarez* court held: "A reasonable jury could very well conclude that only one with knowledge of the marijuana, and who had agreed to participate in the scheme to accomplish its importation, would promise to be on hand at a remote and unlikely area for the unloading of cargo." *Alvarez*, 625 F.2d at 1198.

In *United States v. Blasco*, 702 F.2d 1315 (11th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 275, 276, 78 L.Ed.2d 256 (1983), the court held that sufficient evidence existed to sustain the defendants' convictions on the conspiracy counts. The court stated:

> The Cohen estate is situated in a secluded area, the kind frequently utilized for offload operations. The three agents at the gate heard at least two boats entering the canal that leads to the Cohen dock, and after each of the boats entered, the agents heard numerous thudding sounds. If the agents who were over 200 yards away from the residence could hear the noises, it strains the imag-

ination to think that these appellants were not aware of the offloading taking place on the dock outside the house. The arrests were made in the early hours of the morning, and the aroma of marijuana pervaded the air surrounding the residence. The appellants in and near the house would have been able to smell the bales without difficulty. We think that a reasonably cautious jury could infer from these circumstances that these appellants were involved in a conspiracy to possess and distribute marijuana. As to these appellants, we affirm the convictions on both counts.

*Blasco,* 702 F.2d at 1332. Newbern's and Sheppard's role as return pilots, their presence at the staging area, their being registered under the name Kelly, the use of the name Reid to purchase fuel, and the destruction of evidence when police officers entered their motel room combined could convince a jury that appellants were involved in a conspiracy to import marijuana and a conspiracy to possess with intent to distribute marijuana. "While mere presence alone is inadequate to link a defendant to a conspiracy ... the totality of the circumstances surrounding these appellants arrest evidences much more than mere presence." *Blasco,* 702 F.2d at 1331–32. Unlike in *United States v. Glasgow,* 658 F.2d 1036 (5th Cir. Unit B 1981), we conclude that the government in this case did not fail to prove the knowing participation by Newbern and Sheppard in the conspiracy.

Appellants rely heavily on *DeSimone.* The *DeSimone* court held that the evidence presented by the government was insufficient to prove the defendant's participation in a conspiracy.

In this case, we are confronted with the combined circumstances of DeSimone's association with his co-defendants at various times over a period of several days and his attempted flight in the middle of the night from an automobile which was ditched near the Greensboro airport, a remote area. This evidence certainly arouses suspicion, but does it prove beyond a reasonable doubt that DeSimone combined to import and distribute marijuana? We think not.

*DeSimone,* 660 F.2d at 537. The evidence presented in this case indicating appellants' participation in a conspiracy is much stronger than that in *DeSimone.* Although we realize that a jury must not be permitted to convict on suspicion and innuendo, we conclude that viewing the evidence in a light most favorable to the government, sufficient evidence existed for a jury to conclude beyond a reasonable doubt that Newbern and Sheppard knew of the conspiracy and voluntarily joined in it. *United States v. Littrell,* 574 F.2d 828 (5th Cir.1978) (quoting *United States v. Placios,* 556 F.2d 1359, 1365 (5th Cir.1977)).

Newbern's and Sheppard's convictions for the substantive offenses of importation of marijuana and possession with intent to distribute marijuana must also be sustained. Under the test set forth by the Eleventh Circuit in *United States v. Luis-Gonzalez,* 719 F.2d 1539 (11th Cir.1983), a defendant who has joined in a conspiracy is subsequently liable for all substantive offenses committed by his fellow conspirators in furtherance of the conspiracy so long as the fellow conspirators' acts are within the reasonably foreseeable scope of the conspiracy. *Luis-Gonzalez,* 719 F.2d at 1545, n. 4. Since the evidence is sufficient to prove Newbern's and Sheppard's participation in a conspiracy to import marijuana and a conspiracy to possess with intent to distribute marijuana, we conclude that Newbern and Sheppard are also guilty of importation of marijuana and possession with the intent to distribute marijuana.

### Prosecutorial Misconduct

The final issue which must be addressed is whether the trial court erred in not granting Newbern's and Sheppard's motions for a mistrial based upon alleged prosecutorial misconduct during the prosecutor's closing argument. The prosecutor several times in his closing argument referred to the fact that drugs being imported into the United States would be distributed to children. After the first such re-

mark, counsel for appellants objected and requested a curative instruction. The trial court stated: "I am going to instruct them that whether any children was going to get any of this marijuana is not anything to be considered by you whatsoever." Even after this instruction, the prosecutor again referred to children when discussing drug importation. Although appellants' counsel objected, the trial judge gave no instruction to the jury. Consideration of appellants' motions for a mistrial was delayed until after close of the argument. The prosecutor then proceeded to make two additional comments to which appellants' counsel have now objected: "Who was it to be distributed to? You make the decision based on the evidence." "They are due to be convicted on the basis of the evidence in this case, and we ask you to return a verdict of guilty as to both of these defendants as to all four counts ... and the word can go out, 'we will not tolerate it.'" Following conclusion of the closing arguments, the trial court heard arguments on appellants' motions for mistrial. Although the court denied the motions, it did comment:

> Well, the problem with it, Mr. Segrest, these people aren't suppose to be convicted because marijuana gets into the hands of children. They are supposed to be convicted, if they are convicted, on the basis of the evidence, not who was going to use the marijuana. In my opinion, it is an appeal to emotion, it is an improper argument, and it shouldn't be done; and if you ever do it again, I am going to grant a mistrial.

In the final charge to the jury, the district court specifically instructed the jury that it would be improper for the jury to consider convicting a defendant because of an argument regarding the persons intended to receive the marijuana.

■ The courts have stated: "It is a prosecutor's obligation to avoid arguments on matters which are immaterial and which may serve only to prejudice the defendant." *United States v. Bugros*, 304 F.2d 177, 179 (2d Cir.1962). The prosecutor in *Bugros* referred to children in the defend-

ant's drug case to suggest that defendant was a contemptible person who was unconcerned with the possible danger to his own children. *Bugros*, 304 F.2d at 179.

> We cannot condone the deliberate and unnecessary references to an immaterial detail.... To repeat the reference after the judge's admonition was inexcusable.... Arguments such as those made in the prosecutor's summation should be beneath the dignity of a representative of the government of the United States as they are incompatible with the proper administration of criminal justice.

*Bugros*, 304 F.2d at 179. In this case, the prosecutor's references to children were improper. The only purpose of the comments was to prejudice appellants by suggesting to the jury that appellants' actions would result in drugs being distributed to the children of the community. "When remarks have been made in a trial which should not be made and the court carefully instructs the jury to disregard them, it is a question of judgment whether what was said was sufficiently misleading or prejudicial to call for reversal." *United States v. Georga*, 210 F.2d 45, 47 (3rd Cir.1954). We must examine whether the prosecutor's argument, taken as a whole in the context of the entire case, prejudicially affected substantial rights of the appellants. *United States v. Corona*, 551 F.2d 1386 (5th Cir. 1977).

■ The Fifth Circuit analyzed a question similar to the one in this case in *United States v. Leaman*, 546 F.2d 148 (5th Cir.), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977). In *Leaman*, the prosecutor, during questioning of the defendant, referred several times to the drug problem in the community. After the initial objection by defense counsel, the court gave an instruction to the jury to disregard the statement. The prosecutor then proceeded to ask the defendant whether he was aware that drugs are common in the community. Following another objection, the jury was instructed again to disregard this question. A motion for mistrial was denied. On appeal, the Fifth Circuit

stressed that no justification was shown for the prosecutor's conduct. The Fifth Circuit, however, held that the quick objection and the court's immediate instruction to disregard the improper question each time it was presented, prevents a finding that the suggestion of a drug problem in the community vitiated this conviction. *Leaman,* 546 F.2d at 151. "Reversal is required only when the prosecutor's improper conduct injects such immaterial or erroneous points into the deliberative process that prompt instruction to disregard cannot remove the prejudice. Though the questions should not have been asked, they did not approach an irreparable fouling of the jurors' deliberations." *Leaman,* 546 F.2d at 151. Although we hold that the prosecutor's references to children in his closing argument were improper, we do not reverse the convictions. Appellants' counsel quickly objected to the prosecutor's statements, and the trial judge immediately stated in the presence of the jury that the jury would be warned to disregard the references to children. The jury was again instructed to ignore any reference to children in the trial court's charge. We are not convinced that the prosecutor's improper references to children irreparably fouled the jurors' deliberations.

> Although the prosecutor's statement constitutes error, it is not reversible error. Error must be regarded as harmless if, upon an examination of the entire record, substantial prejudice to the defendant does not appear. *Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); Fed.R.Civ.P. 61. The trial judge in this case instructed the jury immediately after the prosecutor's statement that the attorney's statements are not evidence to be considered by the jury. The defendants rights were sufficiently protected.

*United States v. Morris,* 568 F.2d 396, 402 (5th Cir.1978).

We choose not to reverse the convictions based upon this prosecutorial misconduct because first, substantial evidence exists to sustain the convictions of Newbern and Sheppard on the four counts; and second,

the district court promptly gave an appropriate instruction. *United States v. Barlin,* 686 F.2d 81 (2d Cir.1982). The goal of due process "is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." *Smith v. Phillips,* 455 U.S. 209, 219, 102· S.Ct. 940, 71 L.Ed.2d 78 (1982) (quoting *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)).

For the above reasons, we affirm the convictions of Newbern and Sheppard as to all four counts.

AFFIRMED.