In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________

No. 21-3169
UNITED STATES OF AMERICA,
 Plaintiff-Appellee,

 v.

MICHAEL THOMAS,
 Defendant-Appellant.
 ____________________

 Appeal from the United States District Court for the
 Southern District of Indiana, Evansville Division.
 No. 3:17-cr-00031-RLY-MPB — Richard L. Young, Judge.
 ____________________

 ARGUED FEBRUARY 9, 2023 — DECIDED APRIL 19, 2023
 ____________________

 Before EASTERBROOK, HAMILTON, and LEE, Circuit Judges.
 EASTERBROOK, Circuit Judge. Federal oﬃcials suspected
that Michael Thomas was supplying large quantities of illegal
drugs in Indiana. Thomas was wanted by state oﬃcials too,
and warrants had been issued for his arrest. In order to lie low
(and continue traﬃcking drugs), Thomas obtained several
fake identiﬁcation documents, including one issued by North
Carolina under the name “Frieson Dewayne Alredius”. Using
2 No. 21-3169

this ﬁctitious identity, Thomas leased a condominium in At-
lanta, Georgia.
 Federal oﬃcials tracked Thomas to Atlanta and arrested
him outside the condo building. Thomas’s landlord told the
oﬃcers that she had rented the unit to someone she knew as
“Alredius Frieson”. With the landlord’s consent, oﬃcers
searched the condo, ﬁnding drugs, drug paraphernalia, and
six cell phones. After obtaining warrants to search the phones,
the oﬃcers discovered evidence that Thomas was traﬃcking
methamphetamine. A grand jury indicted Thomas for con-
spiracy to distribute methamphetamine. 21 U.S.C.
§§ 841(a)(1), 841(b)(1)(A), 846.
 Thomas moved to suppress the evidence obtained from
the search of the condo, contending that his landlord could
not consent to a search of the property he had leased. The
United States conceded that the lease gave Thomas a subjec-
tive expectation of privacy in the condo. But it argued that this
is not an expectation that society is prepared to accept as rea-
sonable, because Thomas had obtained the lease by deceiving
the landlord about his identity, which is a crime in Georgia.
Ga. Code §§ 16-9-4(b)(1), 16-9-121(a)(4). The district court
agreed and denied Thomas’s motion. Thomas later pleaded
guilty but reserved the right to appeal the suppression order.
The court sentenced Thomas to 180 months’ imprisonment.
 At the time of the search, Thomas was the condo’s lease-
holder. A tenant lawfully may exclude others, including the
police, even when the landlord consents to a search. Chapman
v. United States, 365 U.S. 610 (1961). And using an alias to sign
a lease, as Thomas did, does not by itself deprive a tenant of a
legitimate expectation of privacy. The United States concedes,
and we have previously recognized, that a person may have
No. 21-3169 3

innocent reasons to use an alias. United States v. Pi<s, 322 F.3d
449, 457–58 (7th Cir. 2003). See also United States v. Watson, 950
F.2d 505, 507 (8th Cir. 1991) (legitimate expectation of privacy
in house purchased under ﬁctitious name); United States v. Vil-
larreal, 963 F.2d 770, 774–75 (5th Cir. 1992) (same for packages
addressed to ﬁctitious names); United States v. Newbern, 731
F.2d 744, 748 (11th Cir. 1984) (same for hotel room registered
under ﬁctitious name).
 Thomas’s use of an alias was not for an innocent purpose.
It was to help him evade arrest. Whether or not Thomas
showed his fake identity card to the landlord, as the United
States asserts—Thomas protests that there is no evidence of
this in the record, but he failed to contest the issue in the dis-
trict court—he gave her a bogus name in order to avoid arrest
on multiple warrants.
 Thomas’s deception does not necessarily mean that he
lacked a legitimate expectation of privacy, however. The war-
rantless search of his condo violated the Fourth Amendment
if he had a subjective expectation that his landlord could not
invite the police to search his residence and society is pre-
pared to recognize that expectation as reasonable. KaD v.
United States, 389 U.S. 347 (1967). That Thomas had a subjec-
tive expectation of privacy is not in dispute. The question,
then, is whether deceiving one’s landlord to obtain a lease al-
ters society’s understanding that a landlord may not consent
to a search on the tenant’s behalf.
 An executed lease, on its own, does not immunize a de-
ceptive lessee from consequences. On the contrary, Thomas’s
landlord retained an ownership interest in the property and
was entitled to protect her interest from a fugitive such as
Thomas. But how she was entitled to protect this interest bears
4 No. 21-3169

on the reasonableness of Thomas’s expectation of privacy.
The landlord could have sought to terminate Thomas’s lease
because of his deception. See Ga. Code §13-5-5 (“[f]raud ren-
ders contracts voidable at the election of the injured party”).
There is a diﬀerence, however, between bringing eviction pro-
ceedings against a fraudulent (or felonious) tenant and invit-
ing the police to search his residence. Chapman holds that the
right to do the former does not imply a right to do the laier.
365 U.S. at 617.
 The Fourth Amendment does not turn on the intricacies of
state law. But that law nonetheless can indicate whether soci-
ety recognizes as reasonable the expectations of tenants such
as Thomas. For example, had the landlord been entitled to re-
move Thomas from the premises without notice or judicial
process, then perhaps she just as easily could have consented
to a search of the property. But the United States did not cite
any authority suggesting that Georgia permits self-help evic-
tions. And our own research suggests that Thomas’s landlord
would have had to initiate a dispossessory proceeding in state
court. See Ga. Code §§ 44-7-2, 44-7-50.
 A tenant in Georgia who deceives or even defrauds a land-
lord is entitled to retain possession of the residence until (1)
the landlord has provided notice to the tenant and ﬁled an
aﬃdavit in state court, (2) the court has issued a dispossessory
warrant, (3) the tenant has had the opportunity to ﬁle an an-
swer, and (if an answer is ﬁled) (4) the court has held a hear-
ing. If the landlord fails to comply with these steps, then the
tenant can pursue a tort claim for wrongful eviction. See, e.g.,
Hart v. Walker, 347 Ga. App. 582 (Ga. App. 2018). Other actions
intended to remove the tenant from the property, such as cut-
ting oﬀ electricity or water, trigger ﬁnes. Ga. Code §44-7-14.1.
No. 21-3169 5

 Even if Thomas’s landlord had initiated a dispossessory
proceeding, Thomas was entitled to all the rights of any other
leaseholder, including the right to exclude strangers such as
police oﬃcers, until the proceeding concluded in the land-
lord’s favor. It does not maier that Thomas knew that he had
deceived his landlord in obtaining the lease. Georgia has cod-
iﬁed his expectation that his tenancy could not be revoked
without notice and an opportunity for judicial process, which
means that his expectation of privacy in the interim is one that
society recognizes as reasonable.
 To be sure, some people may consent to a search even
when they cannot evict a tenant. See Fernandez v. California,
571 U.S. 292 (2014) (co-occupants may consent to a search un-
der some circumstances). But Chapman holds that a landlord
is not among them. Georgia v. Randolph, 547 U.S. 103, 110–12
(2006). Thomas’s landlord could not summarily terminate his
protections without violating the Georgia Code, nor could she
consent to a warrantless search of his condo.
 The United States makes much of the fact that Thomas’s
deception in obtaining the condo was a crime in Georgia,
comparing him to a “burglar plying his trade in a summer
cabin during the oﬀ season” who consequently lacks a legiti-
mate expectation of privacy. Rakas v. Illinois, 439 U.S. 128, 143
n.12 (1978). This amounts to a contention that any violation of
the law in the causal chain of an interest in property elimi-
nates the need for a warrant. But the rule that a person lacks
a legitimate expectation of privacy in stolen property does not
extend so far. At oral argument we asked the United States
about a person who uses illegal drug proceeds to purchase or
rent a residence. Doing so likely constitutes money launder-
ing. Does the person have a legitimate expectation of privacy
6 No. 21-3169

in the residence? The answer must be yes; the deed or lease is
valid, even if acquiring the property was itself a criminal act.
Similarly, someone who signs a lease while intending not to
pay rent—an intent that makes the transaction criminal
fraud—is entitled to bar the door to unwelcome visitors until
the lease is terminated through the legal process.
 The United States responded that the proper question is
whether there is any version of events in which the person
could have acquired the residence without violating the law
(in the money-laundering hypothetical, by choosing to use
untainted funds to pay for the property). It contends that
Thomas could not have obtained the condo without deception
because the landlord would have run a background check,
discovered that he was a fugitive, and rejected his application.
Nothing in the record supports these assertions. And they
strain credulity: “Frieson Alredius” was a ﬁction created just
two months before Thomas signed the lease. Had the landlord
conducted a background or credit check, it would have come
back empty. It is evident that she did not check at all.
 More to the point, this argument is incompatible with the
way courts must evaluate searches. The validity of a search
depends on what law enforcement knew when they con-
ducted the search. See Devenpeck v. Alford, 543 U.S. 146, 152
(2004); Phillips v. Allen, 668 F.3d 912, 915 (7th Cir. 2012). Under
the approach proposed by the United States, by contrast, a
search may be deemed valid or invalid depending on facts
discovered later, in the course of prosecution. At the time of
the search, law enforcement knew that Thomas was a fugitive
but did not know whether he had shown a fake identity card
to the landlord, whether the landlord ran background checks,
and so on. What the agents knew at the time of the search was
No. 21-3169 7

not enough to defeat Thomas’s expectation of privacy in the
condo.
 Byrd v. United States, 138 S. Ct. 1518 (2018), supports our
conclusion. Byrd holds that a person in lawful possession and
control of a rental car has a legitimate expectation of privacy
in the car, even if that person is not an authorized driver un-
der the rental agreement. Terrence Byrd’s right to exclude oth-
ers—such as a carjacker—from the rental car implied a right
to exclude the police, just as Thomas’s right to exclude a bur-
glar from the rented condo does. Id. at 1528–29. And the Jus-
tices emphasized that a breach of a rental agreement, even a
serious one, does not automatically deprive the breaching
party of a legitimate expectation of privacy. Contracts “con-
cern risk allocation between private parties” and breaching
them may result in all sorts of negative ﬁnancial and legal
consequences. Id. at 1529. Here, one of those consequences
may have been Thomas’s eviction from the condo. But “that
risk allocation has liile to do with whether one would have a
reasonable expectation of privacy”. Ibid. And this case con-
cerns a home, which is “ﬁrst among equals” in the eyes of the
Fourth Amendment. Florida v. Jardines, 569 U.S. 1, 6 (2013).
 Byrd left open the question whether a person who not only
lacks authorization to drive a vehicle but also commits a crim-
inal oﬀense by doing so (such as driving without a license)
has a legitimate expectation of privacy in the vehicle. There
appears to be a conﬂict among the circuits on that question.
Compare United States v. Lyle, 919 F.3d 716 (2d Cir. 2019), with
United States v. Be<is, 946 F.3d 1024 (8th Cir. 2020), and United
States v. Cohen, 38 F.4th 1364 (11th Cir. 2022). But that question
diﬀers from the one in this case, and so we do not discuss it
further.
8 No. 21-3169

 One ﬁnal observation. Actual authority to consent is not
always necessary to justify a warrantless search. Police may
search with the consent of a third party if they reasonably be-
lieve that the person consenting has the authority to do so—
that is, if the person has apparent authority. Illinois v. Rodri-
guez, 497 U.S. 177 (1990); United States v. KloD, 943 F.2d 707
(7th Cir. 1991). But the United States has not advanced any
argument that Thomas’s landlord had apparent authority to
consent to a search. And apparent authority, too, rests on the
facts known to law enforcement at the time of the search, not
those discovered later. Rodriguez, 497 U.S. at 188. This does
not aﬀect our conclusion that Thomas’s motion should have
been granted.
 The district court’s decision denying the motion to sup-
press is reversed, and the case is remanded for proceedings
consistent with this opinion.