In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 23-2097

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY GAY,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Central District of Illinois.
No. 4:20-cr-40026-JES-JEH-1 — **James E. Shadid**, *Judge*.

_____

ARGUED APRIL 4, 2024 — DECIDED APRIL 12, 2024

_____

Before EASTERBROOK, HAMILTON, and KOLAR, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Anthony Gay was a passenger in a car that police stopped for a traffic offense. As soon as the car came to rest (following a high-speed chase), Gay walked away briskly, ignored an order to halt, then took off running. Police pursued and caught him after he fell, resumed running, but eventually surrendered. They testified at his trial that they found a gun where Gay had fallen—and later the police found

bullets in a motel room Gay had rented. Because of his felony convictions, Gay is forbidden to possess either firearms or ammunition. 18 U.S.C. §§ 922(g)(1), 924(a), 924(e). The indictment contained one firearms count and one ammunition count. After the jury returned verdicts of guilty, Gay was sentenced to 84 months' imprisonment on each count, to run concurrently, plus three years' supervised release.

Gay's lead argument on appeal is that the evidence does not support his conviction on the firearms charge. He does not contest the sufficiency of the evidence on the ammunition count. Still, the ammunition illuminates the firearms dispute.

Gay checked into a motel for a prepaid, week-long stay. He insisted that the motel not clean his room or allow anyone else to enter. Gay extended the stay for two more weeks, each prepaid. Because Gay was on parole, he was required to tell his supervising officer where he was staying, but he did not do so. Gay was arrested the day before his allowed time at the motel expired. He called the motel from jail and asked the manager to let his girlfriend pick up his property. The manager replied that the room would be sealed until the police accompanied Gay's girlfriend or he obtained a court order. The room was locked so that the staff's electronic keys could not open it. Two weeks passed without any further payment by Gay, and the motel needed the room for other clients. The manager entered to remove Gay's property and found a bag of bullets in a dresser drawer. After the manager called 911, police arrived and retained the bullets.

Gay asked the district judge to suppress the bullets on the ground that the entry had violated his rights under the Fourth Amendment. That motion was denied for multiple reasons: First, Gay's right to occupy the room had expired two weeks

earlier, and the manager was entitled to reclaim the space. A guest's reasonable expectation of privacy ends when his right to occupy the room ends. See, e.g., *United States v. Procknow*, 784 F.3d 421, 426 (7th Cir. 2015). Second, the manager found the bullets before the police were involved, and a private search does not require a warrant or probable cause even when a privacy interest is involved. See, e.g., *United States v. Jacobsen*, 466 U.S. 109 (1984). Third, the manager admitted the police and had every right to do so under applicable state law. Cf. *United States v. Thomas*, 65 F.4th 922 (7th Cir. 2023). The judge might have added that Gay, who was on parole, had a severely diminished expectation of privacy to begin with. *Samson v. California*, 547 U.S. 843 (2006), holds that parole is a form of custody allowing searches that would require a warrant once the sentence expires.

So the bullets were properly admitted into evidence, which supports the firearms charge too. Gay maintains that the weapon the police recovered may have been planted or perhaps was on the street before he fell. The squad car's dashboard camera and the pursuing officer's body camera lost him when he ran around a corner. Yet the testimony of one eyewitness can support conviction without video (or other) corroboration—and the bullets provided any corroboration that a jury may have wanted. For the gun contained cartridges of two different kinds (though the same caliber). Two weeks later the police acquired the bag of bullets from the motel room and found the same mixture of cartridge types. This is powerful evidence that the gun and bullets belonged to the same person. What's more, the jury could infer that Gay ran from the police precisely so that he could get rid of a gun that he knew he was forbidden to possess. All in all, the evidence permitted a reasonable jury to convict on both counts.

The trial at which Gay was convicted was his second. The jury at the first could not reach a unanimous verdict, so the judge set the case for another. Originally the judge named a date about six weeks after the end of the first trial but later cut the gap to four weeks, stating that a later start might push the trial into a holiday period that could make it difficult to select a jury. Gay now argues that the reduction of two weeks in preparation time was prejudicial. Yet the parties had just been through a trial; the evidence had been assembled, and memories about what had happened at the first trial were fresh. Judges have discretion in setting trial dates. See, e.g., *United States v. Egwaoje*, 335 F.3d 579, 587–88 (7th Cir. 2003); *United States v. Davis*, 604 F.2d 474, 480 (7th Cir. 1979). That discretion was not abused. We appreciate that Gay, who was representing himself, may have had more difficulty than a lawyer when preparing for the second trial. Still, the judicial system need not extend special accommodations to someone who exercises his right to self-representation.

The evidence at the two trials was not identical. The judge excluded from the second trial some evidence, admitted at the first, that the judge deemed irrelevant or distracting. For example, Gay wanted to call Officer Jason Foy to testify that the area where the gun was found was a "high crime" area. The district judge doubted the relevance of this testimony. To the extent the point was relevant, it could have been elicited through the testimony of Detective Greg Whitcomb, yet Gay never asked about this while Whitcomb was on the stand.

Another example: Gay wanted Officer Jennifer Laud to testify that the gun had been reported stolen. The judge thought this irrelevant (Gay was charged with possessing a firearm, not a stolen firearm in particular). Allowing the jury

to hear that the gun had been stolen could have made Gay worse off by implying that he was the thief or had acquired the weapon from a thief.

Last example: Gay wanted to call Dora Villareal, a local prosecutor, to testify that police had seized and retained some of his property (including cash) when they arrested him. The judge thought this irrelevant to the charges and observed that exploring it at trial would divert attention toward what had become civil litigation between Gay and the police after they arrested him on a prior occasion. Although the judge did not cite Fed. R. Evid. 403, the rationale for exclusion is clear.

We have said enough to show that Gay was convicted on sufficient evidence in a fair trial. We have not mentioned all of his arguments, but those we have omitted do not require separate discussion—except for his contention that the prosecution was unconstitutional, root and branch. Gay maintains that the Second Amendment permits persons with felony convictions to possess both firearms and ammunition, notwithstanding statutes such as 18 U.S.C. §922(g)(1).

This argument is hard to square with *District of Columbia v. Heller*, 554 U.S. 570 (2008), which in the course of holding that the Second Amendment creates personal rights pointedly stated that "longstanding prohibitions on the possession of firearms by felons" are valid. *Id*. at 626, 635. When extending *Heller* to the states, the Court in *McDonald v. Chicago*, 561 U.S. 742, 786 (2010) (lead opinion), reassured readers that all of the reservations and provisos in the *Heller* opinion retain validity. And in the Court's most recent Second Amendment decision, *New York State Rifle and Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), Justices Alito and Kavanaugh, whose votes were essential to the majority, wrote separately to say that *Bruen* did

not change anything about *Heller*. See 597 U.S. at 72 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns."); *id*. at 80–81 (Kavanaugh, J., joined by the Chief Justice, concurring) (endorsing the statement in *Heller* about the propriety of denying firearms to felons).

One must not read decisions of the Supreme Court as if they were statutes. The Justices have yet to consider the question whether non-violent offenders may wage as-applied challenges to §922(g)(1). One circuit has held that they may, in light of *Bruen*, and that someone whose most serious conviction is for a non-violent crime that did not lead to even one day in prison retains a constitutional right to keep and bear arms. *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc), petition for certiorari pending under the name *Garland v. Range* (No. 23-374). Other circuits have disagreed with that conclusion in post-*Bruen* decisions. See, e.g., *United States v. Cunningham*, 70 F.4th 502, 506 (8th Cir. 2023); *Vincent v. Garland*, 80 F.4th 1197, 1199–1202 (10th Cir. 2023). We may assume for the sake of argument that there is *some* room for as-applied challenges, but that assumption does not assist Gay.

When describing the persons who possess rights under the Second Amendment, *Bruen* repeatedly used the phrase "law-abiding, responsible citizens" or a variant. E.g., 597 U.S. at 26, 70. Gay does not fit that description. He has been convicted of 22 felonies, including aggravated battery of a peace officer and possessing a weapon while in prison.

Gay was on parole after spending almost 25 years in confinement and had promised as part of the agreement to obtain his release that he would not possess a firearm. He violated that condition (in addition to violating the condition requiring him to report his residence). To repeat what we said above: Parole is a form of custody. Gay's sentences had not expired; all parole did was allow him to serve some of his sentences outside prison walls.

Just as *Samson* holds that parolees lack the same privacy rights as free persons, we conclude that parolees lack the same armament rights as free persons. Cf. *United States v. Perez-Garcia*, 2024 U.S. App. LEXIS 6392 (9th Cir. Mar. 18, 2024) (person on bail awaiting trial lacks a constitutional right to carry firearms).

Instead of contesting §922(g)(1) through a declaratory-judgment action, as Range did, Gay violated the law in secret and tried to avoid detection. Cf. *United States v. Holden*, 70 F.4th 1015 (7th Cir. 2023). He fled from the police by car and on foot, and flight to avoid prosecution is a crime in most if not all states. No, Gay is not a "law-abiding, responsible" person who has a constitutional right to possess firearms.

AFFIRMED