**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Manuel Juan ALVAREZ, Defendant-Appellant.**

No. 78–5783.

United States Court of Appeals, Fifth Circuit.

Sept. 17, 1980.

Rehearing Denied Oct. 23, 1980.

Vance, Circuit Judge, filed dissenting opinion in which Fay, Rubin, Kravitch, Henderson, Politz, Hatchett, Tate and Thomas A. Clark, Circuit Judges, joined.

Carl H. Lida, Mark L. Krasnow, Miami, Fla., for defendant-appellant.

Ralph N. Person, Linda Collins Hertz, Asst. U. S. Attys., Miami, Fla., for the United States.

Before COLEMAN, Chief Judge, BROWN, AINSWORTH, GODBOLD, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., GARZA, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RANDALL, TATE, SAM D. JOHNSON, and THOMAS A. CLARK, Circuit Judges.*

REAVLEY, Circuit Judge:

Manuel Juan Alvarez was convicted of conspiring to import marijuana in violation of 21 U.S.C. § 963 (1976). A panel of this court reversed the conviction because it concluded that the government had failed to produce sufficient evidence that Alvarez had joined in the agreement to engage in illegal activity. *United States v. Alvarez*, 610 F.2d 1250 (5th Cir. 1980). Sitting en banc we now reach a different conclusion; the evidence was sufficient to convict.

Our only question is whether the jury could reasonably conclude that the evidence, viewed in the light most favorable to the government, left no reasonable doubt of the appellant's guilt. Viewed in that light, the evidence shows that John Cifarrelli and Edward Peterson during April and May of 1978 discussed with undercover DEA agents Martinez and Caton their scheme for importation of marijuana from a farm in Colombia to the Miami area. The transportation was to be by aircraft to be loaded at a farm in Colombia owned by a co-conspirator, refueled at a small island in the Caribbean and off-loaded at a rural site west of Miami. The undercover agents were to supply the aircraft for an agreed price. Maps, radio frequencies and code names were produced.

The owner of the Colombian farm, Genaro Cruz, arrived in Miami from Colombia on May 16. He spent the night with his friend, our appellant, Manuel Alvarez. The following morning Alvarez drove a pickup truck, in which Cruz was riding and which was loaded with household appliances, to the Opa Locka airport. There they met Cifarrelli, who directed them to the plane which had been supplied by the undercover agents. The agents had not previously met Cruz or Alvarez, nor had their names been revealed, although the agents had been told that the owner of the Colombian farm would handle things on that end and that arrangements would be made for unloading the plane when it returned. Cifarrelli told Agent Martinez that the other two men in the pickup truck were the farmer from Colombia and the one who would be at the off-loading site on return. Martinez discussed the plan with Cruz, who confirmed that he owned the farm where the marijuana would be obtained and that security was assured. Martinez then asked Alvarez if he was going to be there at the unloading site. Alvarez smiled, nodded affirmatively, and asked Martinez if he was going on the plane. After Alvarez had loaded appliances on the plane and was about to leave in the truck, the identity of the agents was revealed and the conspirators were placed under arrest.

Two other aspects of the proof relative to the Florida return site have probative effect. On May 10 the agents were to be shown where this field was located. An associate of Cifarrelli named Nick left them to "talk with a guy who had the field" and get a key to the gate. After Nick failed to return when expected, the two agents and Cifarrelli attempted to locate him. Cifarrelli directed them to an apartment house where they eventually met Nick, who explained that he had encountered a problem at the apartment house and that the landing field they were to be shown was unacceptable. It later was learned that Alvarez lived at the apartment house where this had occurred. Then on May 15 the agents went to see the off-loading site which was to be used. It was in southwest Dade County and was not a likely place for an airplane to land. The flat land which was to be the landing area lay between a canal and cultivated land. After looking at it, the group agreed that two trees would have to be removed prior to the landing.

---

* Judge Jerre S. Williams has become a member of the Court since June 26, 1980, when this case was taken under submission. He does not wish to participate in the decision.

The conspiracy to accomplish the unlawful purpose is plain. Then, did Alvarez know of the unlawful purpose and of the agreement between the others to accomplish it, and did Alvarez join the agreement? Alvarez was a friend of Cruz, the Colombian who was to supply the marijuana. When Cruz came from Colombia on the evening before the arrest and, at a prior date, he stayed at the apartment of Alvarez. The appliances had been stored at that apartment complex and were loaded on a truck driven by Alvarez and taken to the airport where, again, he loaded them onto the airplane. When the conspirators went to see the one who knew about the site to which the plane would return, it was an apartment house where Alvarez also lived. Both Cifarrelli and Alvarez assured agent Martinez that Alvarez would be at the off-loading site.

■■■ The government was not required to prove that Alvarez had knowledge of all the details of the conspiracy or each of its members, provided that prosecution established his knowledge of the essential of the conspiracy. *United States v. Feola*, 420 U.S. 671, 692, 95 S.Ct. 1255, 1267, 43 L.Ed.2d 541 (1975); *Blumenthal v. United States*, 332 U.S. 539, 556–57, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947). Nor can a defendant escape criminal responsibility on the grounds that he did not join the conspiracy until well after its inception. *United States v. Leach*, 613 F.2d 1295, 1299 (5th Cir. 1980); *United States v. Bates*, 600 F.2d 505, 509 (5th Cir. 1979); or because he plays only a minor role in the total scheme. *United States v. Wilson*, 500 F.2d 715, 724 (5th Cir. 1974), *cert. denied*, 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 (1975).

We agree with the panel that the aggregate of the evidence is sufficient to infer that Alvarez knew that criminal activity was afoot. It must also have been obvious to him that there was conspiracy to import the contraband because prior planning and concerted action would be required to load the marijuana in Colombia, fly it into this country, and unload it upon its arrival. *See United States v. Bridgeman*, 523 F.2d 1099,

1111 & n.5 (D.C.Cir. 1975), *cert. denied*, 425 U.S. 961, 96 S.Ct. 1743, 48 L.Ed.2d 206 (1976). Alvarez' joinder in the illicit compact is inferable on two fronts. First, there is direct evidence that Alvarez intended to be at the off-loading site. A jury may well conclude that his intended presence manifested a prior agreement to assist in the unloading. Alternatively, the nodded head may be viewed as assurance to Martinez, then thought to be one in confederacy with Cifarrelli and Cruz, that Alvarez would be at the unloading site to insure that the aircraft was unloaded rapidly. *See United States v. Hassell*, 547 F.2d 1048, 1053 (8th Cir.), *cert. denied*, 430 U.S. 919, 97 S.Ct. 1338, 51 L.Ed.2d 599 (1977). That such assurances to assuage jittery accomplices can constitute conduct in furtherance of the conspiracy, indicating joinder, was also recognized in *United States v. Rodriguez*, 585 F.2d 1234, 1245 (5th Cir. 1978). (Although the *Rodriguez* panel opinion was vacated when the case was reheard en banc, the full court adopted the panel's disposition with respect to Smigowski. *United States v. Rodriguez*, 612 F.2d 906, 908 n.1 (5th Cir. 1980).

■■ The evidence would have been insufficient to support the conviction without the proof that Cifarrelli and Alvarez assured agent Martinez that Alvarez would be on hand at the place and time of the airplane's return to Florida. That proof, combined with all of the other evidence, clearly warranted the verdict of guilt. A reasonable jury could very well conclude that only one with knowledge of the marijuana, and who had agreed to participate in the scheme to accomplish its importation, would promise to be on hand at a remote and unlikely area for the unloading of cargo. Alvarez saw the appliances receive customs clearance; no customs office sat on the canal bank. Prior to Alvarez' confirmation that he could be depended upon for this purpose, Cifarrelli had told the agent that Alvarez would fulfill this role. Cifarrelli and the agent had surveyed the off-loading site. The jury was entitled to conclude that Cifarrelli thereby assured the one who was supplying

the aircraft that Alvarez had agreed to perform his duty in the plan for importation. That duty was such that anyone agreeing to perform it would, without any doubt, understand that the operation was illegal.

The evidence presented was sufficient to support the jury verdict. The judgment of conviction is AFFIRMED.

VANCE, Circuit Judge, with whom FAY, RUBIN, KRAVITCH, HENDERSON, POLITZ, HATCHETT, TATE and THOMAS A. CLARK, Circuit Judges, join, dissenting:

Alvarez nodded his head and smiled. For this he will go to the penitentiary.

In another case a smile and the nod of the head may be sufficient to establish guilt. Here it clearly was not.

This is not a case where an alleged conspirator was engaged in an illegal act or in the presence of a large quantity of contraband so that it reasonably may be inferred that he knew what was afoot. Neither is it a case where he was shown to have participated in or even been present during any conspiratorial conversation. Alvarez was engaged in a completely legal act. He was loading a washing machine onto an airplane. He was asked whether he was going to be there at the unloading site when the plane got back. It was in response to this innocuous inquiry that he smiled and nodded his head. This is all the admissible evidence to which we are cited to show that Alvarez knew of the unlawful conspiracy and agreed to join in it.

The majority points to Alvarez' association with other defendants under suspicious circumstances and recounts suggestive remarks by conspirators outside Alvarez' presence. But it is not enough that he was associating with bad people. *Sawyer v. Sandstrom*, 615 F.2d 311 (5th Cir. 1980); *United States v. Wieschenberg*, 604 F.2d 326, 335 (5th Cir. 1979). Neither will merely suspicious circumstances substitute for proof of his guilt. *United States v. Dyar*, 574 F.2d 1385, 1389 (5th Cir.), *cert. denied*, 439 U.S. 982, 99 S.Ct. 570 (1978). The conversations of participants in the conspiracy

to which the majority alludes were not even admissible as to Alvarez unless it be shown that he too was a conspirator. *United States v. James*, 590 F.2d 575, 581 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).

We said that we have banished the slight evidence rule and that proof beyond a reasonable doubt that a defendant knew and intended to join a conspiracy must be based on substantial evidence. *United States v. Malatesta*, 590 F.2d 1379, 1382 (5th Cir.) (en banc), *cert. denied*, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979). To be sufficient the evidence must be such that reasonable minds can conclude that it is inconsistent with every hypothesis of innocence. *United States v. Wieschenberg*, 604 F.2d at 330–31; *United States v. Warner*, 441 F.2d 821, 825 (5th Cir.), *cert. denied*, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971).

Alvarez may have been a guilty coconspirator or he may have been a humble workman performing a lawful act totally unrelated to any conspiracy, who simply indicated that he would report back to work as instructed. To my mind the majority opinion suggests no way that a jury reasonably could accept one hypothesis to the exclusion of the other.

The conspiracy statutes are vitally important to the protection of society. Yet the potential for injustice in conspiracy cases is enormous. The prosecutor's net may well ensnare the innocent as well as the guilty. The presentation of evidence in such cases is sometimes almost chaotic. We should use particular care to ensure that the prosecution actually proved that the defendant was a participant in the conspiracy before he is sent to prison. Our concept of justice rests on the basic notion that it is only for personal guilt that punishment is justified. *Scales v. United States*, 367 U.S. 203, 224–25, 81 S.Ct. 1469, 1483–1484, 6 L.Ed.2d 782 (1961). In this case the evidence simply falls short. I would reverse.