**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Majed Ahmad KHAMIS,**
**Defendant-Appellant.**

**No. 80–2217.**

United States Court of Appeals,
Fifth Circuit.

April 28, 1982.

Opinion on Rehearing July 12, 1982.

Curtis D. Glover, James P. Finstrom, Dallas, Tex., for defendant-appellant.

D. Mark Elliston, Michael P. Heiskell, Paul E. Coggins, Asst. U. S. Attys., Dallas, Tex., for plaintiff-appellee.

Before BROWN, GOLDBERG and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Convicted by a jury of conspiracy and three substantive charges for his participation in a check "kiting" scheme, Majed Ahmad Khamis, a Jordanian national, appeals, complaining of evidentiary rulings and contending that the evidence was insufficient to support the verdicts.[1] Finding no trial errors, and concluding that the evidence was sufficient to support the convictions on Counts 1, 4 and 5, but insufficient on Count 8, we affirm in part and reverse in part.

*Facts*

The evidence discloses that Khamis and two colleagues, Khamis Khalil Dabeit and Elias George Sammour, were engaged in certain banking activities which included opening accounts in their own names or under aliases, depositing checks drawn on closed accounts, and, when permitted, drawing out the funds ostensibly resulting from the valueless checks. These activities involved several banks in the Dallas, Texas area.

In one transaction, Khamis deposited into his account at the Citizens Bank in Irving, $1,500 in cash and a check for $5,000, payable to his order, drawn on the account of one Yaqoob Yousef Al-Mogargest with the Pan American National Bank. This deposit was made on March 6, 1980. The next day, Khamis withdrew $6,500 from the account. When the Pan American National Bank returned the Al-Mogargest check stamped "Account Closed," Khamis told a bank official that a friend had given him the check

1. Khamis was convicted of conspiracy to perpetrate a checking and savings account kiting scheme, in violation of 18 U.S.C. § 371 (Count 1); stealing bank deposits, in violation of 18 U.S.C. § 2113(b) (Count 5); and overvaluing securities deposited with banks in order to induce them to extend credit, in violation of 18 U.S.C. § 1014 (Counts 4 and 8).

as a loan, that he had spent the money, and that he could not pay the funds back immediately but would do so later. He never did; the bank lost $5,459.43.

At trial, Khamis testified that a friend from New York, Abdul Jamad Mosseim, gave him the $5,000 check from Al-Mogargest and $1,500 in cash, requesting that the funds be deposited in Khamis' account for safe-keeping. The next day, after Mosseim changed his mind and said he needed the money, Khamis withdrew the funds. Khamis testified he had no knowledge there was anything wrong with the deposit.

An expert examiner of questioned documents testified that in his opinion Khamis wrote everything on the $5,000 check, except the signature of Al-Mogargest. In reaching this conclusion the expert had exemplars from Khamis and Al-Mogargest.

On several other occasions, co-indictees Dabeit and Sammour deposited "account closed" checks into accounts in the name of Dabeit, or the alias "Etais Famor." Withdrawals, or attempts at withdrawals, were then made prior to receipt of the notices of dishonor.

Khamis opened an account at the Texas Commerce Bank Northwest on May 30, 1980. About three weeks later, a check drawn on the account of Abdel Hameed Abdul Rahman Al-Mulhem with the Pan American National Bank, payable to the Texas Commerce Bank, was deposited in this account. According to the testimony of the handwriting expert, Al-Mulhem did not write the date, amount, payee, or the notation "car" on this check. The bank refused to extend immediate credit and routed the check for collection. It was returned "account closed." No funds were disbursed; no credit was extended.

On July 1, 1980, Khamis, accompanied by Dabeit, opened six savings accounts, at six different banks, each with a deposit of $300. Two accounts were in the name Ammad Abdullah Majed; two were in the name of

Majed Ammad Abdulla; two were in the name of Ammad Majed. The next day, the police informed Dabeit that he was suspected of banking offenses. On July 3, 1980, Khamis closed all six savings accounts. When the officers attempted to arrest Dabeit ten days later, they found in his apartment a "memory jogger" memo which listed seven banks, six of which had $300 written alongside. The seventh was struck through. These six were the banks in which Khamis opened, and then closed, the savings accounts.

### The Conspiracy

Khamis maintains that the evidence was not sufficient to support his conviction of conspiracy with Dabeit and Sammour in the check-kiting scheme.[2] We do not agree.

■ A criminal conspiracy requires an agreement between two or more persons to commit a crime, and an overt act by one of the conspirators to further the agreement. *United States v. Avila-Dominguez*, 610 F.2d 1266, 1271 (5th Cir. 1980) (*citing United States v. White*, 569 F.2d 263 (5th Cir. 1978), *cert. denied*, 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 149 (1979)). The agreement may be proven by direct or circumstantial evidence. *United States v. Michel*, 588 F.2d 986, 994 (5th Cir. 1979) (*citing United States v. Warner*, 441 F.2d 821, 830 (5th Cir.), *cert. denied*, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971)). The evidence must establish that each conspirator knew of the conspiracy, intended to join it, and participated in it. *United States v. Avila-Dominguez*, 610 F.2d at 1271 (*citing United States v. Malatesta*, 590 F.2d 1379 (5th Cir.) (en banc), *cert. denied*, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979)).

■ Viewing the evidence in the light most favorable to the government, as we must do in assessing a sufficiency of the evidence challenge, we will reverse only if a reasonable jury was bound to conclude that guilt was not proven beyond a reasonable

**2.** The trial judge made the determination that a conspiracy existed between Khamis, Dabeit and Sammour, as required by *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert.*

*denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), before permitting introduction of any evidence which might otherwise be objectionable.

doubt. *United States v. Michel; United States v. Ragano,* 520 F.2d 1191 (5th Cir. 1975), *cert. denied,* 427 U.S. 905, 96 S.Ct. 3192, 49 L.Ed.2d 1199 (1976).

■ The evidence presented suffices to support Khamis' conspiracy conviction. Khamis acknowledged that he, Dabeit and Sammour were acquaintances. On cross-examination he conceded that they were friends. He testified that Dabeit had convinced him to open the six savings accounts to develop "good credit." According to Khamis' testimony, it was his concern about his good credit which precipitated the back-to-back closures on July 3, 1980.[3]

The opening and closing of the six savings accounts is not evidence, *per se,* of criminal behavior. Opening a bank account is a routine action; opening six accounts, albeit less routine, is not criminal. However, opening six accounts while accompanied by Dabeit, who kept a list of the banks, and closing the accounts two days later, shortly after Dabeit was alerted that the police suspected him of banking offenses, constitutes circumstantial evidence of an agreement between the two men. In light of the other deposits and withdrawals against several "account closed" checks by Khamis, Dabeit and Sammour, the jury was entitled to conclude that Khamis conspired with either or both of them in developing and operating a check-kiting scheme. *United States v. Jones,* 642 F.2d 909 (5th Cir. 1981). *See United States v. Alvarez,* 625 F.2d 1196 (5th Cir. 1980) (en banc), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981).

Under 18 U.S.C. § 371, it was also necessary for the government to prove that one of the conspirators committed an overt act in furtherance of the agreement. *United States v. Jones,* 642 F.2d at 914. The opening of the six accounts by Khamis, accompanied by Dabeit, satisfies the overt act requirement. That the opening of the six accounts is an otherwise innocent occurrence does not affect our analysis. It is not necessary that the overt act be illegal. "An act innocent in nature and of no danger to society can suffice if it furthers the criminal venture." *United States v. Jones,* 642 F.2d at 914 (*citing United States v. Willis,* 583 F.2d 203, 207 (5th Cir. 1978); *United States v. Winter,* 509 F.2d 975, 982 (5th Cir.), *cert. denied, Parks v. United States,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975)).

The evidence supports the conviction of Khamis for conspiracy.

### Sufficiency of Evidence—Count 5

Count 5 charges Khamis with violating 18 U.S.C. § 2113(b),[4] because of the March 6–7, 1980 deposit and withdrawal revolving around the Al-Mogargest check. Khamis contends that the evidence does not support the proposition that he intended to steal the $5,000 represented by the Al-Mogargest check.

Khamis characterizes the incident surrounding the Al-Mogargest check as nothing more than the deposit of a "hot check" against which subsequent withdrawals were made. This proffered explanation was rejected by the jury. Inherent in the verdict of guilty of Count 5 is a finding that Khamis took the money with the intent to steal.

The jury was entitled to make this finding. Having reviewed all of the evidence in the light most favorable to the government, we are not prepared to say that no jury, acting reasonably, could have found Khamis guilty. In addition to Khamis' courtroom explanation, the evidence includes the conflicting explanation he gave to the bank

---

**3.** Khamis testified: "On the 3rd day of July I decided that I don't want anything to happen to my name. I began in the morning before nine o'clock. I went to all the banks and drew the money, close it."

**4.** 18 U.S.C. § 2113(b) provides in pertinent part:

Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management or possession of any bank ... shall be fined not more than $5,000 or imprisoned not more than ten years, or both; ...

officer who contacted him about the dishonored check; the testimony of the handwriting expert that Khamis had hand-printed his own name as payee, the amount, and the date on the check in question; Khamis' denial that he wrote anything on the Al-Mogargest check; testimony that the address on the check was not a residence but was the address of the English Language Center which Khamis once attended; as well as evidence reflecting the totality of the scheme in which this transaction played a part.

■ In *Thaggard v. United States*, 354 F.2d 735 (5th Cir. 1965), *cert. denied*, 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 301 (1966), we held that 18 U.S.C. § 2113(b) embraced all felonious takings with intent to deprive the owner of the rights and benefits of ownership, regardless of whether the taking constituted a common law larceny. *See United States v. Turley*, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957). The jury was entitled to conclude that Khamis' deposit of a worthless check and the withdrawal and use of the funds represented by the check, in the circumstances presented, constituted a taking of the $5,000 with intent to steal from the bank, in violation of 18 U.S.C. § 2113(b). We perceive no reversible error.

### Sufficiency of Evidence—Count 4

Count 4 charges that a violation of 18 U.S.C. § 1014[5] occurred when Khamis deposited the Al-Mogargest check, representing its value to be $5,000, knowing, at the time, that it was valueless.

Check-kiting[6] violates 18 U.S.C. § 1014. *United States v. Payne*, 602 F.2d 1215 (5th Cir. 1979), *cert. denied*, 445 U.S. 903, 100 S.Ct. 1079, 63 L.Ed.2d 319 (1980). Careless checkbook recordkeeping is not enough; the prosecutor must show that the defendant misrepresented the value of the check presented to the bank.

Again viewing the evidence in the light most favorable to the government, we conclude, in accordance with our discussion of the sufficiency of the evidence supporting Khamis' conviction on Count 5, that a reasonable jury could find that the evidence left no reasonable doubt Khamis knew that the Al-Mogargest check was worthless. This was a transaction "involving the extension of credit based upon the defendant's willful misrepresentation." *United States v. Payne*, 602 F.2d at 1217. *United States v. Alvarez*, 625 F.2d 1196, 1197 (5th Cir. 1980) (en banc), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981). A jury could reasonably reject Khamis' explanation as incredible.

### Sufficiency of Evidence—Count 8

Count 8 charges a violation of 18 U.S.C. § 1014 arising out of the deposit into Khamis' account in the Texas Commerce Bank of the $5,500 check drawn on the Pan American Bank account of Abdel Hameed Abdul Rahman Al-Mulhem. As noted in the recitation of facts, the Texas Commerce Bank declined to extend immediate credit and accepted the check for collection only. No disbursement of funds ever occurred.

The challenge to this conviction first presents a question whether the "concurrent sentence doctrine" should be applied.[7] Concluding that the doctrine should not be applied, we address the merits of the assignment of error.

A searching review of the evidence discloses that despite substantial reasonable suspicions, very little evidence ties this

5. 18 U.S.C. § 1014 provides in relevant part: Whoever knowingly makes any false statement or ... willfully overvalues any ... property or security, for the purpose of influencing in any way the action of ... any bank the deposits of which are insured by the Federal Deposit Insurance Corporation ... upon any ... advance ... or loan ... or extension of any of the same ... shall be fined not more than $5,000 or imprisoned not more than two years, or both.

6. "Check-kiting" means the "use of a bad check or similar fictitious worthless commercial paper ... to raise money or maintain credit temporarily." *United States v. Payne*, 602 F.2d at 1216 n.1.

7. "The concurrent sentence doctrine is not a sentencing doctrine, but rather, it is a genus of appellate review rules. It clothes appellate courts with the discretion to decline review of convictions ... when a defendant is given con-

transaction to Khamis. The check was not payable to Khamis. There is no evidence that Khamis wrote any part of the Al-Mulhem check or that he ever handled it. The equivocal testimony concerning the manner in which this check was deposited into Khamis' account is not sufficient to satisfy the burden of proof required in a criminal case.

We find no merit in the argument that since the check did not serve as the basis for an extension of credit, no violation of section 1014 occurred. Section 1014 is violated when one deposits a known worthless check in an attempt to induce the extension of credit. There is no convincing evidence, however, that Khamis did this. On the state of this record, a reasonable jury must have entertained a reasonable doubt that this was a transaction "involving the extension of credit based on the defendant's willful misrepresentation." *United States v. Payne*, 602 F.2d at 1217. The conviction of Count 8 must be reversed and the sentence thereon vacated.

### Evidentiary Rulings

■ Khamis assigns error in several evidentiary rulings. He challenges the admission of testimony about the opening and closing of the six savings accounts because these were not criminal acts. We have noted the admissibility of this evidence as proof of an overt act in furtherance of a conspiracy. No error flows from this allowance.

■ Khamis argues that the court erred in admitting the testimony of a detective recounting a statement by Dabeit to the effect that he had no knowledge of the banking transactions which are the subject of the indictment. We find no merit in a claim of prejudice to Khamis flowing from this hearsay. *United States v. Bright*, 630 F.2d 804 (5th Cir. 1980).

■ The trial court also did not err in admitting evidence of the acts of the co-indictees. Acts of co-conspirators are fit grist for the conspiracy mill.

■ Finally, Khamis complains that the trial court erred in allowing testimony that, when arrested, he was carrying an alien registration card bearing his picture but a false name. We perceive no reversible error in this ruling. Khamis was arrested in California on July 14, 1980, shortly after the opening and quick closing of the six savings accounts. This assumption of a false identity was admissible as evidence of consciousness of guilt. *See United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977), cert. denied, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978) (*quoting United States v. Ballard*, 423 F.2d 127, 133 (5th Cir. 1970) ("It is today universally conceded that the fact of an accused's ... concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt ....").

The convictions of Khamis on Counts 1, 4 and 5 are AFFIRMED. The conviction on Count 8 is REVERSED.

AFFIRMED in part, REVERSED in part.

### ON REHEARING

In light of the decision by the Supreme Court in *Williams v. United States*, —— U.S. ——, 102 S.Ct. 3088, 72 L.Ed.2d —— (1982) *sua sponte*, we recall our judgment issued as mandate, grant rehearing, vacate a portion of our opinion, reinstate the balance, and reissue the mandate.

In our opinion, *United States v. Khamis*, 674 F.2d 390 (5th Cir. 1982), we affirmed the conviction of Majed Ahmad Khamis for conspiracy, 18 U.S.C. § 371 (Count 1), stealing bank deposits, 18 U.S.C. § 2113(b) (Count 5), and overvaluing securities to

---

current sentences ...." *United States v. Gray*, 626 F.2d 494, 501 (5th Cir. 1980), cert. denied, 450 U.S. 919, 101 S.Ct. 1367, 67 L.Ed.2d 346 (1981) (*citing United States v. Warren*, 612 F.2d 887 (5th Cir. 1980) (en banc)). Khamis received a sentence of imprisonment for two years on Count 8, to run concurrently with a seven-year sentence on Count 5. We decline to apply the doctrine in this case, perceiving at least two adverse collateral consequences which may result—the effect on parole opportunities, *see United States v. Rubin*, 591 F.2d 278 (5th Cir.), cert. denied, 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979), and on Khamis' alien status, *see* 8 U.S.C. § 1251(a). *But see United States v. MacPherson*, 664 F.2d 69 (5th Cir. 1981).

induce the extension of credit, 18 U.S.C. § 1014 (Count 4). We reversed one conviction under 18 U.S.C. § 1014 (Count 8). We now reaffirm the convictions under 18 U. S.C. §§ 371 and 2113(b) (Counts 1 and 5). Consistent with the holding of the Supreme Court in *Williams*, we reverse the remaining conviction under 18 U.S.C. § 1014 (Count 4), vacating the portion of our opinion discussing that statute.

As modified, our opinion is reinstated and the mandate is reissued instanter.