**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Manuel PARRADO and Elfobaldo Rodriguez, Defendants–Appellants.**

No. 89–5756.
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 20, 1990.

Stewart G. Abrams, Linda M. Osberg, Asst. Federal Public Defenders, Miami, Fla., for Parrado.

Joel Hirschhorn, Miami, Fla., for Rodriguez.

Dexter W. Lehtinen, U.S. Atty., Linda C. Hertz, Harriet R. Galvin, Thomas P. Lanigan, Asst. U.S. Attys., Miami, Fla., for U.S.

Before HATCHETT, CLARK and EDMONDSON, Circuit Judges.

CLARK, Circuit Judge.

Appellants Manuel Parrado and Elfobaldo Rodriguez were found guilty by a jury on two counts of a superseding indictment filed on March 31, 1988. Count one charged defendants with conspiracy to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. § 846. Count two charged defendants with possession with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. § 841.

Appellants Parrado and Elfobaldo Rodriguez raise several claims on appeal. They both challenge the sufficiency of the evidence to support their conspiracy convictions. Specifically, they claim that the evidence is insufficient because the government did not present such things as videotapes and recordings, but instead relied solely on Agent Forteza's and other agents'

testimony. They assert that Forteza's testimony is insufficient to prove intent, a necessary element in conspiracy. Rodriguez appeals the district court's denial of his motion to suppress the cocaine found in his van. He argues that the search of his van violated the Fourth Amendment and asserts that the "automobile" exception does not apply in this case as there were no exigent circumstances. Parrado also appeals the sentence imposed by the district court. He claims that it was imposed in violation of the law and was excessively harsh.

We find that the district court committed no error; the decision of the district court is therefore AFFIRMED.

## FACTS

On November 12, 1987, at appellant Parrado's residence, a confidential informant introduced undercover Drug Enforcement Administration Special Agent Forteza to Parrado and defendant Eugenio Rodriguez. Agent Forteza arranged with them to purchase twelve kilograms of cocaine at $12,500 per kilogram. Parrado and Eugenio did not have the cocaine in hand, but told agent Forteza that they could obtain it from their source and deliver it to Forteza the next day.

On November 13, 1987, Agent Forteza and the confidential informant returned to Parrado's residence. Parrado showed Forteza a one kilogram package of cocaine. Forteza reminded Parrado that the deal was for twelve kilograms whereupon Parrado told Forteza that it would take a while. Forteza left Parrado's residence and returned approximately one hour later. When Forteza returned, only Eugenio Rodriguez was there. Eugenio said Parrado had gone to see his source. Soon thereafter, Parrado returned; he was accompanied by co-defendant Erika Agrillo. Agrillo showed Forteza a kilogram of cocaine which she removed from her purse. Parrado retrieved the other kilogram which he had shown Forteza earlier and placed both packages on the bed. Forteza insisted on purchasing twelve kilograms as agreed. Agrillo sent Parrado outside to a van to retrieve a tool box containing two additional kilograms of cocaine. Appellant Elfobaldo Rodriguez opened the side door of the van and handed Parrado the tool box. Parrado returned with the tool box containing cocaine. Agrillo placed the additional two packages on the bed and told Forteza that he would have to buy the four kilograms before he would get the rest. Forteza agreed, but insisted on getting the balance immediately after paying for the four kilograms. Agrillo told Forteza that the rest was in the van. Forteza then went out to his car to retrieve the money.

While in his car, Forteza radioed the agents who were conducting surveillance of the house and informed them that he had seen four kilograms in the house and the rest was in the van. Forteza returned to the house. The van left Parrado's residence; Special Agent Benisek, a member of the surveillance team, followed it to a coffee shop. Appellant Elfobaldo Rodriguez was driving the van; co-defendant Barrera was a passenger. After the van left Parrado's residence, members of the surveillance team entered Parrado's house and arrested Parrado, Agrillo and Eugenio Rodriguez. Several of the agents then proceeded to the coffee shop to assist Agent Benisek. The agents found Elfobaldo Rodriguez and Barrera leaning against the van drinking coffee and placed them under arrest. After they were handcuffed, one of the agents opened the van's sliding door. The van had no windows through which the agents could see the cargo area of the van; the door was unlocked. Just inside the door, the agents found a shopping bag containing four kilograms of cocaine. The van was impounded and searched thoroughly at DEA headquarters. The search netted two additional kilograms of cocaine in two empty five-gallon paint cans that were located behind the driver's and passenger's seats. The van was registered in Elfobaldo Rodriguez' name.

The Probation Officer and the district court determined Parrado was a career offender which, given the statutory maximum sentence of life imprisonment, yielded offense level 37 with criminal history cate-

gory VI. *See* 21 U.S.C. § 841(b)(1)(A) and U.S.S.G. § 4B1.1. Parrado's guideline range was 360 months to life. Parrado moved for a departure from the guidelines based on his age and the fact that after Parrado served even the statutory minimum sentence of twenty years, it was unlikely that he would recidivate. The district court denied Parrado's motion and stated:

> The Court has considered the facts in this case and reviewed the pre-sentence investigation. Additionally, although the PSI doesn't reflect it, the Court tried the case and is familiar with the evidence. The PSI should be so amended to reflect that the Court has taken notice of the defendant's role in this case.
>
> The Court has further taken note of the defendant's past criminal history, including his past violation of probation, as well as breaches with the Federal Government.
>
> It's this Court's viewpoint that the defendant is a career criminal.

The court then sentenced Parrado to life imprisonment on each count of his conviction.

## DISCUSSION

### A. Sufficiency of the Evidence.

■ The standard of review for sufficiency of the evidence is whether "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982), *aff'd,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). To support a conspiracy conviction under 21 U.S.C. § 846, the government must prove that there is an agreement by two or more persons to violate the narcotics laws. *United States v. Tamargo,* 672 F.2d 887, 889 (11th Cir.), *cert. denied,* 459 U.S. 864, 103 S.Ct. 141, 74 L.Ed.2d 119 (1982). The government must prove knowledge, intent and participation beyond a reasonable doubt. *United States v. Vera,* 701 F.2d 1349, 1357 (11th Cir.1983). Mere presence at the scene is not enough; however, "direct evidence of a conspiracy is not required. A defendant's knowing partic-

ipation in a conspiracy may be established through proof of surrounding circumstances such as acts committed by the defendant which furthered the purpose of the conspiracy." *Id.*

■ Agent Forteza's and the other agents' testimony is clearly sufficient to support a jury finding that both Parrado and Rodriguez were knowing intentional participants in a conspiracy to violate the drug laws. The transaction took place in Parrado's residence and Forteza's testimony demonstrates that Parrado helped coordinate the entire transaction. Rodriguez maintains that the evidence shows that he was merely present and cannot sustain a conviction; however, Rodriguez used his van to transport the cocaine and was the party who handed Parrado the toolbox containing cocaine. We have stated that "[a] conspiracy conviction will be upheld ... when the circumstances surrounding a person's presence at the scene of conspiratorial activity are so obvious that knowledge of its character can fairly be attributed to him." *United States v. Figueroa,* 720 F.2d 1239, 1246 (11th Cir.1983). Elsewhere, in elaborating on the mere presence defense, this court has stated:

> In most cases ... the evidence establishes not mere presence but presence under a particular set of circumstances. In such a case the task of determining the sufficiency of the evidence is not aided by the ritualistic invocation of the "mere presence" rubric. Rather, it requires an examination of all of the proved circumstances, including presence, to determine whether from them a reasonable jury could infer and find beyond a reasonable doubt knowing and intentional participation.

*United States v. Cruz–Valdes,* 773 F.2d 1541, 1545 (11th Cir.1985) (en banc).

■ Appellants also claim that the evidence is insufficient because the government presented only testimony by the agents involved in the operation. Appellants assert that the law requires more reliable forms of evidence such as videotapes and recordings. While such evidence may serve to enhance the government's

case, it is by no means required and appellants cite no authority to support their position. The jury apparently found the agents' testimony credible. Credibility determinations are the exclusive province of the jury. *United States v. Hewitt,* 663 F.2d 1381, 1385 (11th Cir.1981) (jury entitled to believe government's witnesses even if they consist of "an array of scoundrels, liars and brigands").

■ Appellant Parrado's claim that the government failed to connect him with five kilograms of cocaine as alleged in the indictment is patently meritless. Assuming arguendo that Parrado was not aware the van in fact contained an additional six kilograms of cocaine, he was well aware that Forteza wanted twelve kilograms and that Agrillo had told Forteza that the rest of the cocaine was in the van. It is axiomatic that a co-conspirator need not know all the details of the conspiracy and yet is responsible for the acts of his co-conspirators. *United States v. Walker,* 720 F.2d 1527, 1538–39 (11th Cir.1983), *cert. denied,* 465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984). *Cf. United States v. Otero,* 890 F.2d 366, 367 (11th Cir.1989) (two point enhancement provision for possession of a firearm or other dangerous weapon appropriate in case of a defendant although he did not know that his co-conspirator possessed the weapon when the possession was in furtherance of the conspiracy).

The evidence presented is such that a reasonable jury could conclude that the evidence established guilt beyond a reasonable doubt.

B. Suppression of the Cocaine Found in the Van.

■ A warrantless search of a vehicle is permitted if (1) there is probable cause to believe the vehicle contains contraband, and (2) there are exigent circumstances which necessitate a warrantless search or seizure. *United States v. Alexander,* 835 F.2d 1406, 1409 (11th Cir.1988). A warrantless search of a vehicle is in part justified because persons have a reduced expectation of privacy in their vehicles. *Id.* In *Alexander,* the court stated that it is "the

ability of a vehicle to become mobile [which] ... satisf[ies] the exigency requirement." *Id.* at 1410. There is no doubt that the agents had probable cause to search the van and appellant Rodriguez does not challenge this conclusion. Appellant, however, argues that once the DEA agents had placed him and Barrera under arrest, any exigent circumstances ceased to exist. He then reasons that when exigent circumstances cease to exist, the justification for a warrantless search likewise ceases to exist. This conclusion evidences a complete misunderstanding of the law.

In *Michigan v. Thomas,* 458 U.S. 259, 261, 102 S.Ct. 3079, 3080–81, 73 L.Ed.2d 750 (1982), the Court stated:

It is thus clear that the justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant.

*Id.* The Court there reaffirmed its earlier holding that "when police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." *Id.* See *United States v. Ross,* 456 U.S. 798, 807 n. 9, 102 S.Ct. 2157, 2163 n. 9, 72 L.Ed.2d 572 (1982); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). In *Alexander,* the court concluded its discussion of the automobile exception commenting that "the more recent precedents of the Supreme Court and this Court demonstrate that only a slight showing of exigency is required to comply with the auto exception." 835 F.2d at 1410 n. 5. In *United States v. Weber,* 808 F.2d 1422, 1425 (11th Cir.1987), we upheld a search of defendant's locked briefcase several days after the briefcase and defendant were taken into custody. The court concluded that the search was permissible "since probable cause existed to

stop the automobile and conduct a warrantless search of the vehicle and any part of the vehicle that might contain the object of the search." *Id.*

C. Parrado's Sentence.

■ Insofar as Parrado's appeal of his sentence stems from the district court's refusal to depart, his claim is not cognizable on appeal. *United States v. Fossett,* 881 F.2d 976, 979 (11th Cir.1989). However, his claim that the sentence was imposed in violation of the law is appealable under 18 U.S.C. § 3742(a)(1). Specifically Parrado claims that the district court failed to adequately explain its reasons for imposing a life sentence as required by 18 U.S.C. § 3553(c)(1). This section provides "if the sentence is of a kind, and within the range, described [in the guidelines], and that range exceeds 24 months, [the court must give] the reason for imposing a sentence at a particular point within the range."

Typically a reviewing court will not second guess the district court's selection of a particular sentence within the applicable guideline range. *United States v. Alamin,* 895 F.2d 1335, 1337 (11th Cir.1990). However, if a court fails to carry out the mandate contained in 18 U.S.C. § 3553(c)(1), even a sentence within the guidelines arguably is imposed in violation of the law. Our review of the cases shows that neither this nor any other circuit has considered what precisely constitutes an adequate statement of reasons under § 3553(c)(1). In contrast, § 3553(c)(2)—which concerns an explanation of reasons for a departure from the guidelines—requires a court to give "the *specific* reason for the imposition of a sentence different from that described." (emphasis added). Most of the cases that discuss a court's statement of reasons concern such a statement in the context of departures. *See, e.g., United States v. Michel,* 876 F.2d 784, 786 (9th Cir.1989) (remanded because district court's "conclusory statement of reasons" failed "to clearly identify the specific aggravating circumstances present"). One court distinguished the requirements levied under § 3553(c)(1) and § 3553(c)(2) and stated: "Congress intended that the most detailed

explanation be set forth for a sentence beyond the boundary of the Guideline range." *United States v. Cervantes,* 878 F.2d 50, 54 (2nd Cir.1989).

The principal basis for the requirement that a court explain its choice of a sentence within the guideline range when the range exceeds twenty-four months is to facilitate a court's ability to treat like cases alike. *See generally* G. McFadden, J. Clarke, J. Staniels, *Federal Sentencing Manual* ¶ 12.02[1] (1990). The statement of reasons also serves to focus a sentencing court's analysis of the defendant's offense conduct and assists appellate courts' review of whether the guidelines were properly applied. *Id.* One court has stated that when justifying a departure, "a sentencing judge must provide articulable reasons, of a type contemplated by the [Sentencing Reform] Act and the Guidelines." *United States v. Jordan,* 890 F.2d 968, 972–73 (7th Cir. 1989).

■ Section 3553(a) lists the factors that a court "shall consider" when determining a particular sentence to be imposed. The Judicial Conference Committee on Criminal Law and Probation Administration has developed an outline type form for a court to use when giving its reasons for imposing a particular sentence. *Federal Sentencing Manual, supra,* Appendix 12A at 12–35. The Committee distributed a memorandum with the form that discussed the law relevant to the statement of reasons. *Id.* ¶ 12.03[3][a]. The Committee did not resolve whether a court should state its consideration of each of the factors listed in §§ 3553(a)(1)–(7). *Id.* at 12–27, n. 88. However, we conclude that a sentencing court should—when stating its reasons for imposing a particular sentence as required by § 3553(c)—tailor its comments to show that the sentence imposed is appropriate, given the factors to be considered as set forth in § 3553(a). This does not mean that a sentencing court must "incant the specific language used in the guidelines" which applies to each reason given, nor does it mean that a court must state that a particular factor is not applicable in a particular case. *United States v. DeLuna-*

*Trujillo,* 868 F.2d 122, 124 (5th Cir.1989). Simply stated, a sentencing court should be mindful of the "factors to be considered in imposing a sentence" when explaining its reasons for imposing a particular sentence and should tailor its statement accordingly.

 We have reviewed the transcript of the sentencing hearing and are satisfied that what transpired, taken together with the court's closing remarks noted above, provides a sufficient statement of the court's reasons for imposing a sentence at the top end of the range. *Cf. United States v. Wivell,* 893 F.2d 156, 158 (8th Cir.1990) (record of entire sentencing hearing considered in evaluating district court's reasons for imposing particular sentence; reviewing court will not rely exclusively upon court's summary statement at closing of sentencing hearing). Specifically, the court stated:

> In this case, your client has, he has 3 drug convictions. One smuggling conviction. He was convicted while on probation. He was convicted while he was doing substantial cooperation for the Government. All of which goes to show you that he has a total disregard for the law and, basically, there is a very good possibility he will be a repeat offender.

While the offenses were taken into account as prior offenses in sentencing Parrado as a career offender, the fact that he committed crimes while assisting the government and while under direct supervision demonstrated to the district court that Parrado would continue to break the law as long as he was not incarcerated. The district court also concluded that Parrado was not entitled to any leniency simply because he would be over sixty when he completed the minimum prescribed guideline sentence. These factors are among the types listed in § 3553(a) and distinguished Parrado as one who should be sentenced at the top end of the guideline range. Insofar as Parrado's enumeration of error can be interpreted as a challenge to the sufficiency of these factors to support the court's imposing a life sentence, his argument is unavailing. While discussing the role of an appellate court in reviewing departures and the reasons given therefor, one court aptly stated:

> District courts are in the front lines, sentencing flesh-and-blood defendants. The dynamics of the situation may be difficult to gauge from the antiseptic nature of a sterile paper record., Therefore, appellate review must occur with full awareness of and respect for, the trier's superior "feel" for the case. We will not lightly disturb decisions to depart ... or related decisions implicating degrees of departure.

*United States v. Diaz–Villafane,* 874 F.2d 43, 49–50 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). The court's reasoning is equally applicable to the present case. The district court adequately explained its reasons for imposing a life sentence.

AFFIRMED.