**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Gregory A. CATCHINGS, a/k/a Jelly Roll, Defendant–Appellant.**

**No. 90–3061.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 30, 1991.

---

Joseph L. Hammons, Hammons & Whittaker, P.A., Pensacola, Fla., for defendant-appellant.

Randall J. Hensel, Asst. U.S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before KRAVITCH and ANDERSON, Circuit Judges, and ATKINS [*], Senior U.S. District Judge.

## PER CURIAM:

Appellant Gregory Catchings challenges his conviction for distribution of cocaine base and conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841 and 846. Concluding that the district court correctly refused appellant's requested jury instructions and that the evidence was sufficient to support the conspiracy conviction, we affirm the convictions.

### FACTS

From October 1988 through October 1989 the government investigated a drug distribution and conspiracy involving Tony Tate and others. As part of this undercover investigation, Deputy Sheriff Andrew Gainer and a confidential informant met Tate on July 29, 1989 in order to purchase crack cocaine. Tate produced half an ounce of powder cocaine. Gainer paid for and took the cocaine, but said he wanted crack and asked if Tate knew anyone who

[*] Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

could cook the cocaine into crack. Tate then called to a group of people across the street and asked Gregory Catchings to join Tate and Gainer. Catchings did so, and Tate asked him if he could cook the cocaine for Gainer. Catchings responded "let's go," at which point Gainer, Catchings, and the informant drove to a house to cook the cocaine. Catchings had directed them to the house, knew the woman who lived there, and received her permission to use the kitchen to make the crack. Gainer and the informant sat in the kitchen while Catchings cooked the crack. At one point when Gainer approached Catchings to watch the process, Catchings stated that he did not like people to stand over him while he was "cooking dope." After making the crack, Catchings requested and received $30. Gainer had remained in the room during the entire process, and Gainer never mentioned to Catchings what he planned to do with the crack. It was eventually determined by Drug Enforcement Agency officers that the crack weighed over nine grams and was 95% pure.

At trial, Tate admitted to having known Catchings for over a year. He also admitted to having distributed drugs in the area for two years. Although he personally had not asked Catchings to cook cocaine on any other occasion, he did testify that Catchings was known to be good at cooking crack, that he had seen him cooking before, and that Catchings' culinary ability was the reason Tate asked him to do so on July 29.

Catchings entered a voluntary statement after being arrested and receiving his *Miranda* warning. In this statement he admitted to having cooked crack in the past, although he denied being a drug dealer. The voluntariness of this statement was confirmed at trial.

1. The statute reads:
 (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. . . .

## DISCUSSION

*Distribution*

■ Appellant contends that his cooking the cocaine for another person cannot constitute distribution of a controlled substance under 21 U.S.C. § 841(a)(1).[1] He observes that the judge charged the jury that "to distribute simply means to deliver or transfer possession to another person with or without any financial interest in the transaction." Catchings maintains that he never transferred possession because Gainer never relinquished constructive possession of the cocaine.

To support this proposition, Catchings cites *United States v. Tamargo*, 672 F.2d 887 (11th Cir.), *cert. denied*, 459 U.S. 864, 103 S.Ct. 141, 74 L.Ed.2d 119 (1982), which held that possession may include joint possession and may be constructive or actual. He argues that Gainer never relinquished possession, and therefore Catchings could not have transferred possession to him. Additionally, appellant contends that he thought Gainer wanted the crack for his own use and did not know about any possible distribution.

We do not accept Catchings' narrow construction of "distribute." The statute itself defines distribute to mean "deliver," which in turn means "the actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship." 21 U.S.C. § 802(8). Our circuit has interpreted distribution broadly, so that it includes actions which were traditionally considered aiding and abetting. *United States v. Brunty*, 701 F.2d 1375, 1381 (11th Cir.), *cert. denied*, 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983); *United States v. Oquendo*, 505 F.2d 1307, 1310 & n. 1 (5th Cir.1975).[2] In *Oquendo* the court upheld a distribution conviction of someone who arranged the sale of a small amount of heroin

21 U.S.C. § 841.

2. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

but never actually touched or physically possessed the drug. 505 F.2d at 1310.

In this case Catchings, by his own account, entered into joint possession of the cocaine, took physical control over it, told Gainer to stand back while he cooked it, and returned it to Gainer. Additionally, we note that he transformed the drug from fourteen grams of cocaine powder into nine grams of cocaine base. The controlled substance statute defines crack as a schedule II controlled substance, being a derivative form of cocaine. 21 U.S.C. § 812(c). By the terms of the penalty section of the statute, however, cocaine and cocaine base (crack) are treated distinctly. Distribution of five grams of crack is punished at the same level as 500 grams of simple cocaine. 21 U.S.C. § 841(b)(1)(B). Therefore, under the statute, Gainer gave one form of the controlled substance to Catchings, and Catchings gave him back another form of the substance which is considered far more dangerous.[3] Gainer would not have possessed the much more serious substance of crack without Catchings having transformed it, and Catchings took sole control over the cooking and delivery of the crack to Gainer. Under these facts, Catchings' joint possession of the substance, exclusive control over the cooking, and delivery of the crack quite clearly constitute distribution of a controlled substance in violation of the statute.

*Possession*

Catchings presses two arguments regarding his possession of the drugs. First he contends that the district court should have accepted his proposed jury instruction regarding simple possession. He asserts that, because the term possession occurred in the jury instruction on distribution, the jury should have been instructed on "possession." Such an instruction, appellant argues, would have helped the jury

realize that Gainer never relinquished possession and therefore that Catchings did not possess the drug in a manner adequate for a distribution conviction.

This argument is simply a reassertion of Catchings' challenge to the distribution conviction. The district court correctly instructed the jury on distribution, and Catchings' actions could be considered distribution under the statute. The district court's refusal to give the proposed possession instruction is not reversible because the instruction was substantially covered by the distribution instruction and the failure to give the possession instruction did not impair the defense. *United States v. Williams*, 728 F.2d 1402, 1404 (11th Cir. 1984). The district court therefore properly refused the instruction.

Catchings' second argument regarding possession also involves a proposed jury instruction. Appellant requested that the court instruct the jury on possession in order for the jury to consider the lesser included offense of possession of a controlled substance. *See* 21 U.S.C. § 844. Appellant thus argues that a rational jury could have concluded that Catchings merely possessed the cocaine base, presumably in joint possession with Gainer, and did not distribute the drug.

Catchings is only entitled to the lesser included offense instruction if the evidence would permit a rational jury to find him guilty of the lesser offense and not the greater. *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973). In the specific context of possession and distribution of drugs, this circuit has held that where the factual issues are the same for both the lesser offense of possession and the greater offense of distribution, the instruction on

---

**3.** In *United States v. Robinson*, 870 F.2d 612, 613 (11th Cir.1989), we noted that the difference in penalties between crack and other forms of cocaine demonstrated that Congress considered crack to be a more powerful and dangerous drug. In that case we held that a small portion of crack could still lead to the permissible inference that the possessor planned to distribute the drug, even if the same weight of cocaine powder

could not justify the same presumption. In the present case, however, the parties have acknowledged that the appellant could have thought that Agent Gainer did not plan to distribute the nine grams of crack. Therefore, the distribution conviction was not founded on the presumption of distribution based on the quantity of the drug, but rather on the transfer of the cocaine base from Catchings to Gainer.

possession is not required. *United States v. Pirolli*, 742 F.2d 1382, 1387 (11th Cir. 1984), *cert. denied*, 471 U.S. 1067, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985). Here facts involved in the two offenses were the same, and in light of Catchings' transformation of the cocaine into crack, a rational jury could not have concluded that he possessed the crack but did not distribute it. The district court correctly denied the instruction.

*Conspiracy*

 Catchings also challenges the sufficiency of the evidence relevant to his conviction of conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846. When reviewing the sufficiency of the evidence, we will sustain a conviction if, viewing the evidence in the light most favorable to the government, a reasonable jury could find the evidence sufficient to establish guilt beyond a reasonable doubt. *United States v. Davis*, 679 F.2d 845, 852 (11th Cir.1982), *cert. denied*, 459 U.S. 1207, 103 S.Ct. 1198, 75 L.Ed.2d 441 (1983). To support a section 846 conspiracy conviction, the government must prove that two or more persons agreed to violate the narcotics laws. *United States v. Parrado*, 911 F.2d 1567, 1570 (11th Cir.1990). This, of course, includes proving knowledge, intent, and participation. *Id.* Although a defendant's mere presence at the scene of a crime is not enough to prove conspiracy, direct evidence of the conspiracy is not required; knowing participation can be inferred from the surrounding circumstances. *United States v. Gianni*, 678 F.2d 956, 959 (11th Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982).

Catchings argues that the sale of the cocaine occurred prior to his involvement, and that his sole role of cooking the cocaine did not demonstrate his participation in a conspiracy. Catchings acknowledges that he agreed with Tate to take the cocaine, cook it into crack, and give it back to Gainer. Nonetheless, he contends that the conspiracy alleged in the indictment occurred over several months and that his minor participation in one event did not establish his participation in the conspiracy.

Although Catchings correctly points out that he participated on only one day, this circuit has held that a defendant may be convicted of conspiracy even if he entered the conspiracy after its inception, did not know all the details of the conspiracy, and played only a minor role; the defendant need only have known the essential purpose of the conspiracy and have acted to further it. *Tamargo*, 672 F.2d at 889; *United States v. Badolato*, 701 F.2d 915, 920 (11th Cir.1983). Here the record, viewed in the light most favorable to the government, sufficiently supports the jury's finding. Tate specifically called for Catchings out of a group of people because he knew that Catchings was experienced in cooking crack. Catchings admitted that he had cooked crack in the past, although not for Tate. Catchings agreed to cook the crack, and Tate turned Gainer over to Catchings to proceed to the house for cooking. Catchings knew where to go, had access to a house not his for the sole purpose of cooking crack, and cooked it proficiently, stating that he did not like people watching over him when he "cooked dope." Catchings would never have received the money for his participation nor provided the crack but for his agreement with Tate, and Tate used Catchings' ability in order to complete the deal with Gainer.

These facts are sufficient to support the conclusion that Catchings and Tate knowingly conspired to distribute crack to Gainer. This incident furthered the conspiracy organized by Tate and others. Although Catchings' role was minor, he accepted it knowingly. The essential goal of the conspiracy was the distribution of cocaine, and Catchings agreed to help distribute the cocaine to Gainer. Although he did not know the details of the entire conspiracy, he knew and aided its essential purpose and thus conspired to violate the narcotics laws. As we stated in *Parrado*, even minor actions, when considered in context, are sufficient to support a conspiracy conviction. 911 F.2d at 1570. Indeed, in *Parrado*, the court upheld a conspiracy conviction of one appellant based on evidence that he had

transported the cocaine and delivered it to the buyers. *Id.* Similarly, in *United States v. Alvarez*, 625 F.2d 1196 (5th Cir. 1980) (en banc), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981), the court held that evidence was sufficient for a conspiracy conviction where it showed the defendant to have loaded washing machines onto a plane which was to be used to import drugs, to have agreed to be at the location of the unloading of the drugs, and to have housed his friend who organized the shipment of drugs. In the present case, the evidence demonstrates greater participation in the conspiracy than that presented in either *Parrado* or *Alvarez.* Catchings not only agreed to transport Gainer to the house, he also agreed, without hesitation or explanation, to cook the cocaine which he knew Tate had supplied. By cooking the cocaine, he played an essential role in helping Tate distribute crack, a role far less "minor" than that upon which the court affirmed the conviction in *Alvarez.* We therefore hold that the evidence was sufficient to support Catchings' conviction of conspiracy.

AFFIRMED.