[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 14, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-16088
Non-Argument Calendar

_____

D. C. Docket No. 08-80024-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RODERRICK VANN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 14, 2009)

Before BLACK, HULL and FAY, Circuit Judges.

PER CURIAM:

After a jury trial, Roderrick Vann appeals his convictions for two counts of possession with intent to distribute at least five grams of crack cocaine found in his apartment, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Counts 1 and 2), and one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count 3).  After review, we affirm.

## I.  BACKGROUND

**A.    Arrest and Search**

On April 24, 2007, two Palm Beach County Sheriff's deputies, Officer Lonney Moral and Officer Michael Murray, submitted an application for a search warrant and affidavit to a Palm Beach County Circuit Judge.  In support of the application, the officers submitted an affidavit, which they both signed.  The officers sought to search the premises and curtilage of apartment 5 at 605 North Federal Highway in Lake Worth, Florida.

According to the officers' affidavit, a black male calling himself "Hot" resided at the apartment.  The officers averred that, on April 21, 2007, they personally observed Hot sell crack cocaine to a confidential informant ("CI") during two separate controlled buys conducted over a one-hour period.  Specifically, the officers averred that, while each CI was under constant surveillance, Hot exited apartment 5, approached the CI and exchanged $20 for .2

2

grams of crack cocaine. After each transaction, the officers recovered the purchased crack cocaine from the CI and confirmed the identity and weight of the drug through field testing. In addition, during the one-hour period, Officer Moral observed three "hand-to-hand" transactions between Hot and unknown individuals.

On April 24, 2007, the judge issued the search warrant. On May 3, after observing Defendant Vann leave apartment 5 and ride as a passenger in a car driven by a woman, law enforcement officers conducted a traffic stop. In a search incident to Vann's arrest, Officer Moral found a ten-dollar bill containing a piece of crack in the car's ashtray. After Vann was given a Miranda warning, Vann said that the crack cocaine found in the car belonged to him.

Vann was taken by patrol car to apartment 5, where officers executed the search warrant. During the search, officers found a loaded handgun and two bags of crack cocaine, one in a bedroom dresser drawer along with a razor blade and a lighter and the other in the pocket of a jacket hanging in the bedroom closet. The two bags found in the apartment contained 27.9 and 12.7 grams of crack cocaine.

Later, during a recorded interview at the police station, Vann told Officer Moral that he sold crack cocaine because he had no other way to earn an income and that he traded crack cocaine for the handgun. Vann also indicated that he was

the only person living in apartment 5, although his girlfriend dropped by occasionally.

## B. Indictment

Vann was indicted on these four counts: (1) possession with intent to distribute at least five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Count 1); (2) possession with intent to distribute at least five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Count 2); (3) possession of a firearm and ammunition by a person previously convicted of a crime punishable by more than one year of imprisonment, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count 3); and (4) possession of a firearm and ammunition during and in relation to a drug-trafficking crime–that is, the offenses charged in Counts 1 and 2–in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 4), all occurring on or about May 3, 2007. Vann was not indicted for the controlled buys conducted on April 21, 2007 and described in the officers' search warrant affidavit.

## C. Motion to Suppress

Prior to trial, Vann filed a motion asking the district court to conduct an in camera hearing to determine whether the testimony of the government's CIs might assist Vann at a suppression hearing and at trial. Vann argued that the search warrant affiants misidentified Vann as the individual who sold the CIs crack

4

cocaine on April 21, 2007 and that the CIs might support this claim. Vann also filed motions in limine seeking to exclude: (1) evidence seized from his apartment because the search warrant was not supported by probable cause; and (2) evidence of the April 21, 2007 controlled buys. After a suppression hearing, the district court concluded that Vann had not met the threshold requirement for a <u>Franks</u> hearing and denied Vann's motions to suppress and to disclose the identities of the CIs. In response, Vann acknowledged that his motion in limine under Rule 404(b) had been resolved because the government stated that it did not intend to introduce evidence of the April 21 transactions.

**D. Trial and Sentencing**

Just before trial, Vann objected to the introduction of evidence of the crack cocaine found in his car because it was not charged in the indictment. He also objected to any mention of the search warrant because the jury would construe its existence as a "judicial stamp of approval." The district court overruled Vann's objection to the introduction of the crack cocaine found in the car, concluding that this evidence was "part of the offense or at least inextricably intertwined" with it. The district court sustained Vann's objection to the admission of the search warrant, but overruled the objection to mentioning the warrant.

At trial, the government presented testimony from Officer Moral and two other law enforcement officers as to the controlled buys, Vann's arrest, the search of apartment 5 and Vann's subsequent confession. Several officers, including Officer Moral, testified that the amount of drugs found in Vann's apartment indicated that he was a street-level dealer and, as such, the officers would not have expected to find sales records, such as a ledger, or scales during the search. Officer Moral also testified that, although they found a lighter, they found no other drug paraphernalia commonly used by crack cocaine users, such as a pipe.

The government presented testimony of Jeanette Marie Perr, a forensic chemist with the Drug Enforcement Administration. Perr stated that the two packages of crack cocaine found in Vann's apartment weighed 12.3 grams and 26.1 grams.

Over Vann's objection, the government also called as an expert witness Detective Dwayne Fernendes of the Delray Beach Police Department, an experienced narcotics investigator who had posed undercover as a drug distributor and drug purchaser. Fernendes testified, inter alia, that: (1) a gram of crack cocaine could equal between 7 and 10 doses, at $10 to $20 per dose; (2) the crack cocaine rocks found in Vann's apartment were in the size and shape of those sold by street-level dealers for $10 to $20 per rock; (3) forty grams of crack would

6

equal 400 doses; and (4) the amounts of crack cocaine found in Vann's apartment–27.8 grams and 12.7 grams–were "absolutely" distribution amounts.

In addition, Detective Fernendes stated that he had never seen a crack cocaine user with a large amount of crack cocaine. Typically a user would have at most seven to ten crack cocaine rocks. And, a user would need a pipe in addition to a lighter to smoke the crack. Fernendes explained that large rocks of crack cocaine are cut up with razor blades, and that street-level dealers do not typically use scales to measure doses. Fernendes also had not seen street-level drug dealers who kept ledgers because street-level drug dealers typically receive cash at the time they make their deals, rather than front drugs to buyers.

After the government rested, Vann moved for a judgment of acquittal on Counts 1 and 2 on double jeopardy grounds. The district court denied the motion. Vann also requested a jury instruction on the lesser-included offense of simple possession for Counts 1 and 2 and that the verdict form include this offense. The district court postponed ruling on this request while Vann presented his defense.

Vann called Amber Armstrong, his girlfriend from 2004 to 2007. Armstrong testified that she was the driver of the car during the May 3, 2007 traffic stop. According to Armstrong, she moved out of Vann's apartment a year and a

7

half before his arrest when she learned Vann was using drugs. At that time, Armstrong saw a small amount of drugs in the apartment, but not a handgun.

After the defense rested, the district court denied Vann's request that the jury verdict form include the lesser-included offense of simple possession. The district court also denied Vann's renewed motion for a judgment of acquittal. The district court instructed the jury that it could find Vann guilty of Counts 1 and 2 if it found beyond a reasonable doubt that Vann: (1) knowingly possessed a controlled substance; and (2) possessed the controlled substance with the intent to distribute it. The district court explained that the second element "simply means to possess with intent to deliver or transfer possession of a controlled substance to another person with or without any financial interest in the transaction." The jury found Vann guilty on the drug offenses in Counts 1 and 2 and the felon in possession of a firearm offense in Count 3, but acquitted him of Count 4, the offense of possessing a firearm during a drug offense. The district court imposed a 240-month sentence.

## II. DISCUSSION

### A.  Franks Hearing

Vann argues that he was entitled to a Franks hearing before the district court ruled on his motion to suppress. Vann claims the search warrant affidavit's statements linking the occupant of apartment 5 with the controlled buys were false.

8

Under Franks, when a defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." Franks v. Delaware, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 2676 (1978). To be entitled to a hearing, the defendant must "point out specifically the portion of the warrant affidavit that is claimed to be false" and provide "a statement of supporting reasons." Id. at 171, 98 S. Ct. at 2684. The defendant's attack "must be more than conclusory" and the allegations of a deliberate falsehood or of reckless disregard for the truth "must be accompanied by an offer of proof." Id. Furthermore, the alleged deliberate falsity or reckless disregard must be "only that of the affiant, not of any nongovernmental informant." Id.[1]

Here, Vann failed to make a substantial preliminary showing that the officers deliberately or recklessly included false statements in their affidavit. We note that, although Vann characterizes the allegedly false statements as

---

[1]Although generally we review a district court's denial of a request for an evidentiary hearing for an abuse of discretion, we have not articulated the precise standard of review for the denial of a request for a Franks hearing. See United States v. Arbolaez, 450 F.3d 1283, 1293 (11th Cir. 2003). We need not resolve this issue, however, because even under a more exacting de novo standard of review, we find no error.

misidentification, the officers' affidavit did not identify Vann as the individual calling himself "Hot" and selling the crack cocaine outside the apartment. The affidavit simply stated that a person named Hot exited apartment 5 and sold crack cocaine to the CIs. Further, Vann does not seem to dispute that the controlled buys occurred outside apartment 5, only that he was the man seen by the officers selling the crack cocaine to their CIs.

Regardless, Vann failed to offer any proof to support his claim that the statements linking an "occupant of apartment # 5" to the controlled buys were false. Vann argued that he could not offer proof because the district court refused to order the disclosure of the CIs' identities. However, this nondisclosure did not prevent Vann from submitting his own affidavit stating that he was not the person who sold the crack cocaine to the CIs and that no one else had access to his apartment on April 21 or from making such a proffer at the suppression hearing. Moreover, Vann did not identify any inconsistencies or other circumstances that might cast doubt on the officers' statements that the drug dealer came from apartment 5, particularly in light of Vann's confession to dealing crack cocaine and the evidence that he was the apartment's only occupant. Cf. United States v. Kirk, 781 F.2d 1498, 1502-03 (11th Cir. 1986) (upholding district court's finding of reckless disregard in the misidentification of defendant and a co-conspirator as two

10

known drug traffickers where their physical descriptions did not match those of known drug traffickers and officers observed defendant for forty minutes from a distance of only fifteen feet).

Given that Vann's attack on the veracity of the affiants' statements was conclusory and unsupported by an offer of proof, the district court did not err in denying Vann's request for a Franks hearing.

## B.    CIs' Identities

Vann argues that the district court erred in denying his motion to disclose the names of the CIs involved in the controlled buys described in the warrant affidavit.

The government has a privilege to withhold the identity of law enforcement informants.  Roviaro v. United States, 353 U.S. 53, 59, 77 S. Ct. 623, 627 (1957). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement."  Id.  However, the privilege is limited.

> Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.  In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action.  Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause.  In these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication.

11

Id. at 60-61, 77 S. Ct. at 628 (footnotes omitted). The Roviaro balancing test takes into account "the particular circumstances of each case, the crime charged, possible defenses, and the potential significance of the informant's testimony." United States v. Gutierrez, 931 F.2d 1482, 1490 (11th Cir. 1991). This Court has "focused the inquiry on three factors: the extent of the informant's participation in the criminal activity, the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant, and the government's interest in nondisclosure." Id. (quotation marks omitted).

The defendant has the burden to show that a CI's testimony "would significantly aid in establishing an asserted defense," and "[m]ere conjecture about the possible relevance of [the CI's] testimony is insufficient to compel disclosure." Id. at 1491 (quotation marks omitted); see also United States v. Alfonso, 552 F.2d 605, 618 (5th Cir. 1977) (holding that disclosure of identity of a CI used to secure a wiretap order was not required, as the CI did not participate in the activity for which the defendant was charged).[2]

Furthermore, "[a]n in camera hearing may be helpful in balancing the interests of the appellants against those of the government, but the precedent of this

_____

[2]This Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

12

Court holds that an <u>in camera</u> hearing is not required whenever the identity of an informant is requested." <u>United States v. Kerris</u>, 748 F.2d 610, 614 (11th Cir. 1984); <u>see also</u> <u>United States v. Tenorio-Angel</u>, 756 F.2d 1505, 1509 n.7 (11th Cir. 1985) (noting that while the "Supreme Court has indicated that an <u>in camera</u> hearing is one way to aid the trial court in its application of the <u>Roviaro</u> test[,]" the trial court's decision on whether to hold a hearing "depends upon whether the trial court has the information necessary to determine if disclosure of the informant's identity is required without holding an <u>in camera</u> hearing").[3]

Vann argues that the disclosure of the CIs' identities would establish that he was not the drug dealer who sold the CIs the crack cocaine on April 21. However, Vann was not charged with any crimes stemming from the April 21 drug transactions. In fact, Vann's misidentification defense relates to the issuance of the search warrant and not to the crimes charged in the indictment. Because the CIs were not involved in the criminal conduct with which Vann was indicted, Vann has not satisfied the first <u>Roviaro</u> factor.

For the same reason, Vann has not shown a direct relationship between his defense at trial and the testimony he expects from the CIs. This is particularly true

---

[3]We review the denial of a motion to disclose the identity of an informant for abuse of discretion. <u>Gutierrez</u>, 931 F.2d at 1490. We also review for abuse of discretion the denial of a request for an in camera hearing. <u>United States v. Kerris</u>, 748 F.2d 610, 614 (11th Cir. 1984).

given that the government did not plan to and did not actually introduce evidence of the April 21 drug transactions or call the CIs as government witnesses. Thus, any testimony by the CIs that Vann was not present during the April 21 drug transactions would not aid Vann in defending against the charged crimes that occurred on May 3. Nor would such testimony contradict the other evidence of his guilt, such as his confessions and the large amount of crack cocaine found in his apartment. Thus, Vann has not satisfied the second Roviaro factor.

Finally, as to the third Roviaro factor, the government's interest in nondisclosure was significant given that at least one of the CIs was threatened after the search warrant was executed. Because the government had a strong interest in nondisclosure and Vann failed to show that the CIs' alleged testimony would significantly aid him in his trial defense, the district court did not abuse its discretion in refusing to compel disclosure of the CIs' identities. Further, because the district court had all the information necessary to determine whether disclosure was required, the district court did not abuse its discretion in declining to hold an in camera hearing on the issue.[4]

## C. Admission of Crack Cocaine Found in Vann's Car

---

[4]The fact that Vann's misidentification defense relates to only the validity of the search warrant and not to the charged crimes distinguishes his case from United States v. Rutherford, 175 F.3d 899 (11th Cir. 1999), and United States v. Panton, 846 F.2d 1335 (11th Cir. 1988).

14

Vann argues that the district court should have excluded evidence of the crack cocaine seized from the car after the traffic stop.

Under Federal Rule of Evidence 404(b), evidence of uncharged crimes may be admitted only for purposes other than proof of bad character.[5] Rule 404(b) is a rule "of inclusion which allows [extrinsic] evidence unless it tends to prove only criminal propensity." United States v. Ellisor, 522 F.3d 1255, 1267 (11th Cir. 2008) (alteration in original) (quotation marks omitted). "Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." United States v. Williford, 764 F.2d 1493, 1499 (11th Cir. 1985). Accordingly, evidence of uncharged crimes is admissible if it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined

---

[5]Rule 404(b) states:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .
Fed. R. Evid. 404(b).

with the evidence regarding the charged offense." <u>United States v. McLean</u>, 138 F.3d 1398, 1403 (11th Cir. 1998) (quotation marks omitted).[6]

Officers stopped the car after observing Vann leave his apartment and get in it. Immediately after stopping the car and finding the crack cocaine, officers took Vann back to the apartment, executed the search warrant and found the additional crack cocaine that underpins the charged drug offenses. The crack cocaine found in the apartment was at least partially broken up into $10 and $20 rocks, and the rock found in the car was a $10 or $20 piece.

Given these facts, the district court did not err in finding that the crack cocaine in the car was linked in time and circumstances with and arose from the same transaction as the charged offenses, namely Vann's possession of the crack cocaine found in his apartment. The traffic stop, Vann's arrest and the search of the car were also all part of the chain of events leading up to discovery of the drugs and handgun in Vann's apartment. Further, Vann failed to articulate how the admission of this evidence unfairly prejudiced him sufficient to substantially outweigh its probative value. <u>See</u> <u>Chavez</u>, 204 F.3d at 1317. Thus, the district court did not abuse its discretion in admitting evidence of the crack rock found in

---

[6]We review admissions of Rule 404(b) evidence for abuse of discretion. <u>Ellisor</u>, 522 F.3d at 1267. Furthermore, evidence admitted in violation of Rule 404(b) is harmless when there is substantial evidence of the defendant's guilt. <u>United States v. Chavez</u>, 204 F.3d, 1305, 1317 (11th Cir. 2000).

16

the car.  And, in any event, given the large amount of drugs found in Vann's apartment and his confession, any alleged error in admitting this evidence was harmless.

**D.    Expert Testimony**

Vann contends that the district court abused its discretion when it permitted Detective Fernendes to testify as an expert witness.  Vann does not challenge Fernendes's qualifications as an expert or his methodologies.  Rather, Vann argues that Fernendes exceeded the scope of his role as an expert when he testified that the amount of drugs found in Vann's apartment was a distribution amount.

Federal Rule of Evidence 702 permits expert testimony if "specialized knowledge" will help the jury "to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  Furthermore, we have concluded that "[t]he operations of narcotics dealers are a proper subject for expert testimony under Rule 702," and have "recognized the well-established rule that an experienced narcotics agent may testify as an expert to help a jury understand the significance of certain conduct or methods of operation unique to the drug distribution business."  United States v. Garcia, 447 F.3d 1327, 1335 (11th Cir. 2006) (quotations marks omitted); see also United States v. Butler, 102 F.3d 1191, 1199 (11th Cir. 1997) (holding that the district court did not abuse its discretion in allowing testimony, based on the

officer's experience, that money seized was packaged in "dealer folds" – a manner of packaging specific to drug dealers).[7]

Here, Fernendes's testimony that the amount of crack cocaine found in Vann's apartment was a typical distribution amount aided the jury in understanding the significance of the possession of such a large amount of drugs. Furthermore, any alleged error in admitting this testimony was harmless given that two other officers also testified, without objection, that the amount of drugs found in the apartment indicated Vann was a street-level drug dealer.

**E.      Sufficiency of the Evidence on Counts 1 and 2**

Vann argues that the government failed to prove beyond a reasonable doubt that he had the intent to distribute the crack cocaine he possessed. Because Vann failed to properly preserve this argument by raising it in his motion for a judgment of acquittal, we review this claim only for a miscarriage of justice. See United States v. Tapia, 761 F.2d 1488, 1491-92 (11th Cir. 1985).[8] Under this standard, we will reverse only upon a finding that "the evidence on a key element of the offense is so tenuous that a conviction would be shocking." Id. (quotation marks omitted).

---

[7]We review a district court's ruling on the admissibility of expert testimony for abuse of discretion. United States v. Douglas, 489 F.3d 1117, 1124 (11th Cir. 2007), cert. denied, 128 S. Ct. 1875 (2008).

[8]Vann's initial and renewed motion for a judgment of acquittal raised only a double jeopardy argument as to Counts 1 and 2.

18

Possession with intent to distribute crack cocaine under 21 U.S.C. § 841(a)(1) is proven by evidence of "three elements: (1) knowledge; (2) possession; and (3) intent to distribute." United States v. Mercer, 541 F.3d 1070, 1076 (11th Cir. 2008), cert. denied, 129 S.Ct. 954 (2009). "Intent to distribute can be proven circumstantially from, among other things, the quantity of cocaine and the existence of implements such as scales commonly used in connection with the distribution of cocaine." United States v. Poole, 878 F.2d 1389, 1392 (11th Cir. 1989); see also United States v. Wilson, 183 F.3d 1291, 1299 (11th Cir. 1999) (holding that sufficient evidence supported a defendant's conviction for possession with intent to distribute where police found seven grams of crack cocaine, with a street value of approximately $800, and a razor blade, "which drug dealers often use to cut up rocks of crack cocaine they intend to distribute," in the defendant's car, and there was evidence from which the jury reasonably could have concluded that possessing $800 worth of crack cocaine was associated with being a dealer and not a consumer).

Here, the amount of crack cocaine found in Vann's apartment was almost 40 grams. Based on testimony that a gram of crack cocaine is equivalent to about seven doses worth $10 each, the crack cocaine in Vann's apartment was worth at

least $2,688 and would have produced at least 250 doses and perhaps as much as 400 doses.

Three witnesses testified that the amount of crack cocaine found in Vann's apartment indicated that he was a street-level drug dealer. Witnesses also testified that they would not expect to find scales or documentation of drug sales in the possession of a street-level dealer, but would expect to find a pipe in the possession of a crack cocaine user. Officer Ferry and Detective Fernendes explained that dealers use a razor blade, such as the one found during the search in a bag along with several pieces of crack cocaine, to cut crack cocaine rocks into small pieces for distribution. Detective Fernenedes also testified that the crack cocaine found in Vann's apartment was cut into the same shape as the rocks sold by street-level dealers for $10 or $20 each. Detective Fernendes further testified that he had never seen a crack cocaine user with a large amount of crack cocaine and that a typical user would have at most seven to ten rocks. Finally, Officers Moral and Ferry both testified that Vann admitted selling crack cocaine because he had no other income.

This is compelling evidence that Vann possessed the crack cocaine in his apartment in order to sell it on the street. Vann points to the testimony of his ex-girlfriend, Armstrong, who testified that over a year before Vann was arrested she moved out of his apartment when she saw a small amount of crack cocaine and

20

learned that he was a crack user and to the lighter found with the razor blade. This evidence of Vann's personal use does little to undermine the ample evidence that, at the time of the search, Vann was a street-level crack cocaine dealer. Accordingly, we conclude that the evidence supporting a finding of an intent to distribute was not so tenuous that Vann's convictions on Counts 1 and 2 are shocking. Indeed, even under a <u>de novo</u> standard of review, a reasonable jury could have found beyond a reasonable doubt that Vann intended to distribute the crack cocaine in his apartment.

**E.    Simple Possession Jury Instruction**

Vann challenges the district court's refusal to give his requested jury instruction on the lesser-included offense of simple possession. However, Vann did not make a written request for this instruction, as required by Federal Rule of Criminal Procedure 30. <u>See</u> Fed. R. Crim. P. 30(a). Thus, the district court did not abuse its discretion in refusing to give it. <u>See</u> <u>United States v. Cunningham</u>, 194 F.3d 1186, 1200 (11th Cir. 1999).[9]

Even if Vann had properly requested a simple possession instruction, his argument would fail. "In the specific context of possession and distribution of drugs, this circuit has held that where the factual issues are the same for both the

---

[9] We review a district court's refusal to give a proposed jury instruction for abuse of discretion. <u>United States v. Klopf</u>, 423 F.3d 1228, 1241 (11th Cir. 2005).

21

lesser offense of possession and the greater offense of distribution, the instruction on possession is not required." United States v. Catchings, 922 F.2d 777, 780-81 (11th Cir. 1991). Here the factual issues for both offenses were the same. And, in light of the overwhelming evidence of an intent to distribute, no rational jury could have concluded that Vann possessed the crack cocaine only for his personal use.

## III. CONCLUSION

For all the foregoing reasons, we find no reversible error and affirm Vann's convictions.

**AFFIRMED.**